The STATE of Ohio, Appellee,

v.

SPEARS, Appellant.

[Cite as *State v. Spears,* 178 Ohio App.3d 580, 2008-Ohio-5181.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22443.

Decided Oct. 3, 2008.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Kelly D. Crammer, Assistant Prosecuting Attorney, for appellee.

James S. Armstrong, for appellant.

---

WOLFF, Presiding Judge.

{¶ 1} Dae'Shawn Spears was convicted after a jury trial in the Montgomery Court of Common Pleas of murder, two counts of felonious assault, discharging a firearm on or over a public road, and tampering with evidence. The trial court separately convicted Spears of having weapons while under disability. Five of the charges included firearm specifications, which were merged. The trial court sentenced Spears to an aggregate sentence of 21 years to life in prison. Spears appeals, arguing that his convictions were against the manifest weight of the evidence. For the following reasons, Spears's convictions for all offenses other than tampering with evidence will be affirmed.

{¶ 2} The state's evidence at trial revealed the following facts.

{¶ 3} At approximately 1:00 p.m. on March 18, 2006, William Jackson was walking westbound on West Second Street in Dayton, Ohio, when he met Antonio Bailey and, soon thereafter, Spears. Although the three initially appeared to have a congenial conversation, Spears pulled out a black automatic gun and fired at Jackson repeatedly. As Spears shot at him, Jackson ran across Second Street and collapsed in the bushes by the southeast corner of West Second Street and Huron Avenue. Bailey then asked Spears, "Why'd you do that, man?" Spears responded to Bailey that Jackson "got what he deserved." Spears and Bailey both fled the scene. Sonequa Cunigan, who was seated in her parked vehicle on the same block, witnessed the shooting. At trial, Cunigan and Bailey identified Spears as the shooter. Jackson died from a single bullet wound.

{¶ 4} Dayton police officers were dispatched to the scene at 1:09 p.m. The officers were informed that the suspect was fleeing on foot toward Nathan's Superette on Delphos Avenue wearing a gray hooded sweatshirt and dark pants. Bailey testified that Spears was wearing a gray hooded sweatshirt, a black do rag, and blue jeans; Cunigan testified that Spears was wearing a tan-colored hoodie.

{¶ 5} At the scene, officers searched the alley between West Second Street and Delphos Avenue, looking for shell casings, a handgun, and other evidence. No evidence was recovered in that alley. Police officers collected Jackson's personal items, a black and white ball cap, a cellular telephone, and one .380–caliber casing from several points along Second Street between Huron Avenue and Westwood Avenue. Christopher Monturo, firearm and tool mark examiner with the Miami

Valley Regional Crime Lab, testified that the cartridge may have been fired by a 9 mm Macarov semiautomatic pistol.

{¶ 6} Dr. Kent Harshbarger, deputy coroner for Montgomery County, testified that Jackson died from a gunshot wound. Jackson had one gunshot entrance wound, which was located below his left armpit at his left upper mid-back near his shoulder. The bullet traveled through Jackson's back left rib, left lung, and heart, and it stopped next to his sternum. Dr. Harshbarger recovered the projectile, which was later identified by Monturo as a .380–caliber bullet.

{¶ 7} On April 4, 2006, Spears, who was a juvenile at the time of the shooting, was being detained by the Montgomery County courts on other charges. Spears had a conversation with Anthony Parker, a youth leader (akin to a corrections officer). According to Parker, Spears asked him, "Hey, Mr. Parker, can you look on the computer and tell me what I'm being charged for?" When Parker asked Spears why he wanted to know, Spears responded, "Well, I'm sure you probably heard what they're saying? Well, I did it, but they ain't got no evidence." Spears stated to Parker that he had fought "the individual" and the next time he saw him, Spears had pulled a gun and shot him in the shoulder. Spears also indicated that he had thrown the gun away. Spears told Parker that his mother had begged him to turn himself in on a lesser charge so he would not be a suspect in the shooting.

{¶ 8} In his defense, Spears presented the testimony of Anthony Brown and also testified on his own behalf. Brown testified that Bailey had confessed to shooting Jackson. Brown heard Bailey state that Bailey's mother, with whom Jackson often stayed, had "set up" Jackson to be robbed. When Jackson tried to run away, Bailey "shot him a couple times."

{¶ 9} Spears testified that he had seen Bailey around 1:00 p.m. on March 18, 2006, while he (Spears) was walking to 35 North Upland. Spears denied, however, that he was at the scene when Jackson was shot. Spears further testified that Parker had misunderstood what he had said on April 4, 2006. Spears claimed that he was merely relating what other people were saying about Jackson's murder; he was not confessing to the crime.

{¶ 10} After deliberating, the jury convicted Spears of murder, two counts of felonious assault, discharging a firearm on or over a public road, and tampering with evidence. The trial court convicted Spears of having weapons while under disability. The trial court sentenced him accordingly.

{¶ 11} In his sole assignment of error, Spears claims that his convictions were against the manifest weight of the evidence.

{¶ 12} When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the

evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility. *State v. Lawson* (Aug. 22, 1997), Montgomery App. No. 16288, 1997 WL 476684, *4. "Contrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion." Id. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin*, 20 Ohio App.3d at 175, 20 OBR 215, 485 N.E.2d 717.

{¶ 13} Spears claims that the state's eyewitnesses were not credible and there was no physical evidence linking him to the shooting. Spears asserts that Bailey and Cunigan gave conflicting testimony about the events of March 18, 2008, and he claims that both individuals had reason to lie. Spears emphasizes that Brown testified that Bailey had admitted to shooting Jackson, and he asserts that Brown, who did not know Spears prior to the shooting, was more credible. Spears also argues that Parker misunderstood his statement and that he did not admit to committing the shooting.

{¶ 14} Upon review of the evidence, we find ample evidence to support Spears's convictions for murder, felonious assault, discharging a firearm on or over a public road, and having weapons while under disability. The state presented two eyewitnesses—Cunigan and Bailey—both of whom testified that Spears shot at Jackson several times. Bailey and Cunigan indicated that Bailey had been with Spears and Jackson at the time of the shooting, and both testified that Bailey had asked Spears after the shooting why he had shot Jackson.

{¶ 15} Although both Bailey and Cunigan testified that Spears was the perpetrator, Spears emphasizes that their stories varied widely regarding Spears's and Bailey's interactions prior to the shooting. In Bailey's direct examination, Bailey testified that he first saw Spears when he was at Nathan's Superette on Delphos Avenue. Bailey then walked up Huron Avenue and stopped to talk to somebody in a car. Bailey saw Cunigan and her husband drive past and turn right onto West Second Street. Bailey then turned eastward onto Second Street, and he saw Spears coming out of the alley. Bailey also saw Jackson coming out of his mother's house at the corner of Second Street and

Westwood Avenue. Bailey indicated that the Cunigans were parked across the street from 3111 West Second Street. Bailey met up with Jackson near the alley on West Second Street between Huron and Westwood Avenues. Bailey and Jackson started walking to the store when they were approached by Spears. Bailey testified: "Next thing I know, the gun came out and [Spears] shot him the first time, and [Jackson] took off running. And, he kept shooting him. So, I ran."

{¶ 16} During cross-examination, Bailey testified that he had worked on someone's car during the morning of March 18. He indicated that he went to Nathan's afterward to buy cigarettes and went to his deceased grandfather's home to change clothes. Spears was walking in same direction, although not with him, when Bailey was walking back to his mother's house.

{¶ 17} Bailey further testified that he had talked to the police on several occasions, the first of which occurred on March 22, four days after the shooting. At that time, Bailey indicated that he heard the shots from Nathan's Superette and he heard about the shooting from a friend of his mother. Bailey told the officer that someone who looked like him and had the same ballcap as he did had been with Spears at the time of the shooting. Bailey said that he ran up Huron Avenue after the shooting.

{¶ 18} On March 23, Bailey gave a videotaped statement to the police. At this time, Bailey had said that he left his house around 9:00 a.m. to purchase cigarettes from Nathan's. Bailey stated that he met Jackson on Second Street on his way home. At this interview, Bailey indicated that he saw Spears shoot Jackson.

{¶ 19} In contrast to Bailey's testimony, Cunigan testified that she saw Bailey *and* Spears talking to someone in a car near Huron and Delphos Avenues. Shortly thereafter, while Cunigan was parked along West Second Street, she saw Bailey and Spears turn from Huron Avenue onto Second Street and meet up with Jackson right before they reached the alley. Cunigan's testimony thus suggested that Bailey and Spears were friendly and walking together just prior to the shooting.

{¶ 20} Spears argues that Cunigan was not credible, because she admitted to knowing Bailey's mother, she had a felony conviction, and she did not contact the police after the shooting. Spears notes that Cunigan did not see Spears pull out a gun, did not know the color of the gun, and did not see in which hand the gun was held.

{¶ 21} Spears asserts that Brown offered the most credible evidence. Brown testified that he had known Bailey for three to four years and that Bailey was his stepfather's nephew. Brown testified that Bailey confessed to shooting Jackson

while Bailey, Bailey's sister, and Bailey's cousin were smoking marijuana at Brown's mother's house. On cross-examination, Brown was presented with an affidavit in which Brown had stated that his mother and stepfather were present when Bailey confessed to shooting Jackson; the affidavit did not mention Bailey's sister or cousin. Brown explained at trial that his mother and stepfather were "present" because they were in the house, although out of earshot.

{¶ 22} Upon review of Bailey's, Cunigan's, and Brown's testimony, it is apparent that the jury could have reasonably accepted either Bailey's and Cunigan's version of events or Brown's version of events. We give substantial deference to the jury's decision to credit Bailey's and Cunigan's testimony that Spears had shot Jackson. Although Bailey acknowledged telling several stories to the police and his version conflicted with Cunigan's testimony that Bailey and Spears were together prior to the shooting, Cunigan corroborated Bailey's critical testimony that Spears had shot Jackson, that Jackson had tried to flee and fell into the bushes, and that Bailey had asked Spears why he had shot Jackson immediately following the shooting. In short, we cannot find that the jury "lost its way" when it concluded that Spears shot and killed Jackson on March 18, 2006.

{¶ 23} Although not specifically argued by Spears, we find that Spears's conviction for tampering with evidence was plain error. The offense of tampering with evidence is defined as follows: "No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation." R.C. 2921.12(A)(1). The state's evidence in support of that charge consisted of the absence of the weapon from the scene of the shooting and Spears's own statements, relayed by Parker, that he "threw the gun away."

{¶ 24} We have stated that the discovery of a dead body with bullet wounds and the absence of the gun that inflicted those wounds are insufficient evidence of tampering with evidence to permit the use of the defendant's statements about the disposal of the gun. *State v. Like*, Montgomery App. No. 21991, 2008-Ohio-1873, 2008 WL 1759080, ¶ 4. Without additional evidence to support an inference that the gun was thrown away to impair its value or availability as evidence, the sate, upon objection, would not have been permitted to present Spears's alleged admission to disposing of the gun. Because there was no properly admissible evidence to support the inference that Spears tampered with evidence by disposing of the gun, Spears's conviction for tampering with evidence is based on insufficient evidence and is, therefore, necessarily against the manifest weight of the evidence.

{¶ 25} The assignment of error is overruled in part and sustained in part.

{¶ 26} Spears's conviction for tampering with evidence with a firearm specification and the one-year consecutive sentence imposed on that charge are vacated. Spears's aggregate sentence is thus modified to 20 years to life in prison. In all other respects, the judgment will be affirmed.

Judgment of conviction vacated in part
and sentence modified.

FAIN and DONOVAN, JJ., concur.