OPINION
{¶ 1} Defendant, Brandon Wilson, appeals from his conviction and sentence for aggravated robbery and carrying concealed weapons.
 {¶ 2} In April 2007, Michael Wilson was looking for an inexpensive car for his stepson, Paul Cupp. Wilson found a *Page 2 
1992 Chevy Cavalier offered online at Autobuy.net for $450.00. On April 14, 2007, Wilson called the phone number appearing in the ad and spoke with "Montego," who identified himself as the seller, telling Montego he wanted to see the car. Montego directed Wilson to a house located at 756 N. Paul Lawrence Dunbar Avenue in Dayton.
 {¶ 3} When Wilson, Cupp and Cupp's girlfriend arrived at that location in Wilson's pickup truck, a man walked out into the street and shook Wilson's hand through the open driver's window. The man said his wife was unlocking the garage and would bring the car around for them to see. Believing that the man looked familiar, Wilson asked if he had ever been a student at the charter trade school, ISUS, where Wilson teaches. The man replied that he had gone there, but not for very long.
 {¶ 4} When no one appeared with the car, the man walked back toward the house. He returned a few minutes later and said his wife was bringing the car around. When Wilson turned
toward the garage to see if the car was coming, the man pulled out a gun and pointed it at Wilson, telling Wilson he wanted his car keys and all of his money.
 {¶ 5} When Wilson said he did not have any money, the robber pointed the gun at Cupp and demanded money from him. *Page 3 
When Cupp likewise said he didn't have any money, the robber got into Wilson's truck and demanded to be taken to the ATM at Third and Broadway Streets. Wilson complied, and after arriving at the ATM, he withdrew $200 and gave it to the robber. The robber directed Wilson to drive to Dayton View Park near Broadway Street and Edgewood Avenue, where the robber got out and fled on foot. Wilson called 911. Officers responded quickly and searched the area, but did not find the robber. The house at 756 N. Paul Lawrence Dunbar Avenue turned out to be vacant.
 {¶ 6} A few weeks later, Dayton Police Detective Bill Elzholz and Special Agent Timothy Ferguson of the F.B.I. set up a sting to apprehend the robber. Using the phone number provided by Wilson, the officers called and posed as potential buyers for the 1992 Cavalier. A man who identified himself as "Josh," the seller, said the car was available. On June 5, 2007, Ferguson started getting calls from Josh on his cell phone. Josh directed the officers to an alley near 352 Brooklyn Avenue.
 {¶ 7} When Detective Elzholz initially passed by that alley, he saw two men. Detective Elzholz then pulled into the alley, and as police cruisers converged on the scene, Elzholz and Ferguson exited their vehicle with guns drawn and *Page 4 
identified themselves. One of the men, Brian Leak, stayed in the alley. The other, Defendant Brandon Wilson fled, discarding a gun into some bushes as he ran. Defendant was soon captured and his gun recovered. Police discovered Ferguson's and Michael Wilson's phone numbers in Brian Leak's cell phone.
 {¶ 8} Detective Elzholz put together a photospread that same day that included Defendant's picture. When Elzholz showed the photospread to Michael Wilson, he identified Defendant as the robber but refused to sign the photograph he had selected, explaining that he was not sufficiently confident to testify in court. Michael Wilson nevertheless identified Defendant at trial. Paul Cupp could not identify Defendant from the photospread, but at trial Cupp testified he was ninety percent sure Defendant was the robber.
 {¶ 9} Defendant was indicted on one count of aggravated robbery, R.C. 2911.01(A)(1), with a three year firearm specification, R.C. 2941.145, and one count of carrying concealed weapons, R.C. 2923.12(A)(2). Defendant filed a motion to suppress the pretrial identification evidence. The trial court overruled the motion following a hearing.
 {¶ 10} Defendant waived his right to a jury trial. Following a trial to the court, Defendant was found guilty of *Page 5 
all charges and specifications. The trial court sentenced Defendant to concurrent prison terms of four years for aggravated robbery and twelve months for carrying concealed weapons. The court also imposed a consecutive three year prison term on the firearm specification, for a total sentence of seven years.
 {¶ 11} Defendant appealed to this court from his conviction and sentence.
FIRST ASSIGNMENT OF ERROR
 {¶ 12} "THE TRIAL COURT ERRED IN FAILING TO SUPPRESS TAINTED IDENTIFICATION TESTIMONY."
 {¶ 13} When a witness who identifies a defendant has been confronted with a live or photographic lineup of suspects, due process requires the court to suppress evidence of the witness's identification of the defendant if the court finds that (1) the confrontation was unduly suggestive of the defendant's guilt and (2) the witness's identification of the defendant was unreliable under the totality of the circumstances.State v. Waddy (1992), 63 Ohio St.3d 424; State v. Murphy (2001),91 Ohio St.3d 516. The reliability of a photographic identification is in issue on a Crim. R. 12(C)(3) motion to suppress that identification only when the photographic lineup was unduly suggestive. Otherwise, *Page 6 
reliability is an issue for the trier of fact to decide.
 {¶ 14} In creating this photospread, State's Exhibit 3, Detective Elzholz used the computerized screening system maintained by the Montgomery County Sheriff's Office that utilizes photographs on file at the jail. Detective Elzholz selected photos of five men similar to Defendant in race, age, weight, complexion, and hairstyle, and who also had a moustache. The computer randomly arranged the photos, putting Defendant in position number six. We have held that this computerized method of creating photospreads avoids most potential unfairness, and almost any claim that the photospread itself was suggestive. State v.Parrish, Montgomery App. No. 21206, 2006-Ohio-4161, at ¶ 16.
 {¶ 15} Defendant does not argue that the format or presentation of the photographic lineup itself was somehow suggestive. Rather, he argues that the identification was unreliable because the description Michael Wilson gave police of the robber, a black male, 5'9", 185 pounds, does not match Defendant who is only 5'4" and 140-145 pounds. Absent a contention that the lineup procedure was unduly suggestive, such differences relating to the reliability of the identification go to the weight of that evidence, and are for the trier of fact to resolve. *Page 7 
 {¶ 16} Defendant also argues that Detective Elzholz improperly influenced Michael Wilson to identify Defendant by (1) telling Wilson before he viewed the photographic lineup that there had been "some new developments" in the case and he needed to come down to the Safety Building and bring Cupp and his girlfriend with him, and by (2) telling Wilson after he had identified Defendant from the photographic lineup that police had arrested two suspects, giving Wilson Defendant's name.
 {¶ 17} The comment by Detective Elzholz about new developments in this case that Defendant now complains about was evidence that was introduced at trial, not at the hearing on the motion to suppress. Because that remark was not part of the evidence before the trial court at the time it denied Defendant's motion to suppress, we may not consider it in deciding whether the trial court erred in overruling Defendant's motion to suppress. State v. Ishmael (1978), 54 Ohio St.2d 402.
 {¶ 18} After Michael Wilson identified Defendant from the photospread, Detective Elzholz told him that police had arrested two suspects, and provided Wilson with Defendant's name. After learning Defendant's name, Wilson subsequently went to the ISUS school where he teaches and pulled *Page 8 
Defendant's file. Although there was a copy of Defendant's driver's license in the file, the picture was so blurry Wilson was unable to identify him as the robber. However, these matters go to the reliability of Wilson's subsequent in-court identification of Defendant, and do not render the photospread from which Wilson identified Defendant unduly suggestive.
 {¶ 19} On this record, we do not find that the photographic lineup or its manner of presentation to the witnesses was unduly suggestive. The trial court did not abuse its discretion when it denied Defendant's motion to suppress the pretrial identification.
 {¶ 20} Defendant's first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 21} "APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 22} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
 {¶ 23} "[T]he court, reviewing the entire record, weighs *Page 9 
the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord:State v. Thompkins (1997), 78 Ohio St.3d 380.
 {¶ 24} In arguing that his conviction for aggravated robbery is against the manifest weight of the evidence, Defendant claims that it was his co-defendant, Brian Leak, who arranged the details of the transactions concerning sale of the car, and who spoke with the potential buyers, including Michael Wilson, and subsequently the police, setting them up to be robbed. Defendant also points out that even though the three victims had a good opportunity to view the perpetrator during the crime, for a substantial period of time, only one victim, Michael Wilson, made a pretrial photographic identification of Defendant as the robber, and he refused to sign the photograph he selected because he was unsure. Furthermore, Wilson's description of the robber as an African-American male, 5'9", 180 pounds, does not match Defendant who is only 5'4", 140-145 pounds.
 {¶ 25} Despite Defendant's suggestion otherwise, it is clear that Defendant was not found guilty merely because *Page 10 
police found him in the company of Brian Leak. Michael Wilson identified Defendant before trial from a photographic lineup, and in court during the trial as the man who robbed him at gunpoint. The robber looked familiar to Wilson, and Defendant admitted that he had briefly attended the school where Wilson teaches. Paul Cupp testified at trial that he was ninety percent certain in his identification of Defendant as the robber.
 {¶ 26} A few weeks after the robbery, police set up a sting and posed as potential buyers for the same vehicle Michael Wilson had inquired about. Brian Leak was on the phone with police giving them directions to the meeting place when police arrived on the scene. Defendant was standing next to Leak, and when police arrived Defendant took off running, discarding a gun as he fled. Defendant subsequently admitted the gun police recovered belonged to him.
 {¶ 27} The trier of facts, the trial court judge, did not lose her way simply because she chose to believe the State's witnesses, which she had a right to do. DeHass. Defendant presented no witnesses, and on this record his identity as the man who robbed Wilson at gunpoint is not reasonably in dispute.
 {¶ 28} Reviewing the record as a whole, we cannot say that *Page 11 
the evidence weighs heavily against a conviction, that the trial court lost its way in choosing to believe the State's witnesses, or that a manifest miscarriage of justice occurred. Defendant's conviction for aggravated robbery is not against the manifest weight of the evidence.
 {¶ 29} Defendant's second assignment of error is overruled.
The judgment of the trial court will be affirmed.
DONOVAN, P.J., And BROGAN, J., concur. *Page 1