OPINION
{¶ 1} Defendant-appellant Clennie Manning appeals from his convictions and sentence for Aggravated Robbery and Aggravated Burglary. He argues that his indictment is defective; the trial court erroneously excluded a transcript of the victim's preliminary hearing testimony; and his convictions are against the manifest weight of the *Page 2 
evidence. We conclude that the indictment is not deficient, and the convictions are not against the manifest weight of the evidence. Moreover, we conclude that the trial court did not abuse its discretion in refusing to admit the transcript. The judgment of the trial court is Affirmed.
 I {¶ 2} Gary Clark is a physically disabled man who has been prescribed Oxycontin to relieve his pain. During the early afternoon of December 7, 2006, Clark's girlfriend, Jenny, his friend Crystal, his niece Louetta, and Louetta's boyfriend, Clennie Manning, visited Clark in his home. At that time, Clark had known Manning for about six months, although he only knew him by the nickname of Tatoo Pete. Louetta and Manning spent most of the visit in Clark's kitchen discussing their faltering relationship. Louetta asked Clark a couple of times to give one of his pain pills to Manning. Clark refused and insisted to Louetta that Manning leave.
 {¶ 3} After the other visitors left, Clark and Jenny went out to get dinner. When they returned, they found Manning on the sidewalk outside of Clark's home. Jenny invited Manning in, and they ate. Jenny left, and Clark thought that she was going to return to get Manning. In the meantime, Manning and Clark watched television. Clark fell asleep, and when he woke up at about 9:00 p.m., Manning was gone. Clark turned off the television, lit some candles, and turned on the radio.
 {¶ 4} About a half an hour later, a man ran through the front door of Clark's home screaming, "Give me your pills. Give me your pills." When Clark refused, the man threatened, "I'm not playing. I have got a weapon." Clark recognized Manning's voice. *Page 3 
Manning approached Clark and grabbed the jacket that he had draped around his shoulders. Clark turned on the light and saw Manning's knife. After Manning found nothing in the jacket, he yanked at Clark's shirt, causing the pocket to rip. Clark's two bottles of pills and more than $40 fell to the floor. Clark pulled down the bandanna covering his assailant's face and recognized Manning, including his distinctive facial tatoo. Clark grabbed one bottle of medication. Manning tried to cover his face while he picked up the money and the other bottle, which contained about 85 Oxycontin pills, and ran out the front door.
 {¶ 5} Clark called the police. He gave a physical description of Manning, including his clothing. When Louetta returned, she provided his full name. Four hours later, the police arrested Manning near Clark's home. Manning was found in possession of a knife, but not the pills or money.
 {¶ 6} Manning was indicted on one count each of Aggravated Robbery, Aggravated Burglary, and Possession of Cocaine, but the State dismissed the Possession charge. At trial, Manning's defense was that either Clark had given the pills away or that someone else stole them. He established that Clark had given pills away in the past and that Clark's friend, Crystal, is a drug addict. Manning opined that Clark blamed him for the missing pills because he had to have a good story in order to get more medication from his doctor. The jury found Manning guilty of Aggravated Robbery and Aggravated Burglary. The trial court sentenced Manning to concurrent six-year prison terms. Manning appeals.
 II *Page 4 {¶ 7} Manning's First Assignment of Error is as follows:
 {¶ 8} "THE INDICTMENT AGAINST APPELLANT WAS DEFECTIVE AND THEREBY VIOLATED HIS RIGHTS UNDER THE OHIO AND UNITED STATES CONSTITUTIONS."
 {¶ 9} Relying on State v. Colon, 118 Ohio St.3d 26, 2008-Ohio-1624, Manning argues that the first count of the indictment against him was defective in that it failed to allege a mens rea for the Aggravated Robbery charge. We disagree.
 {¶ 10} Colon, supra, is distinguishable from Manning's case because, the defendant in Colon was charged with Robbery under R.C. 2911.02(A)(2), while Manning was indicted on a charge of Aggravated Robbery, in violation of R.C. 2911.01(A)(1), which requires, in addition to the purpose of committing a theft, the element of having a deadly weapon on or about the offender's person and either displaying it, brandishing it, indicating that the offender possesses it, or using it. As we have previously held, Aggravated Robbery under R.C. 2911.01(A)(1), apart from the purpose to commit a theft, is a strict-liability offense, which does not require a mens rea; therefore, the holding inColon is inapplicable to a charge under that section. State v.Smith, Montgomery App. Nos. 21463 22334, 2008-Ohio-6330, ¶¶ 72-73, citing State v. Wharf (1999), 86 Ohio St.3d 375, 378, 715 N.E.2d 172. See, also, State v. Williamson, Montgomery App. No. 22878,2008-Ohio-6246, ¶ 18.
 {¶ 11} Manning's First Assignment of Error is overruled.
 III {¶ 12} Manning's Second Assignment of Error is as follows: *Page 5 
 {¶ 13} "THE TRIAL COURT ERRED IN NOT ADMITTING AS EVIDENCE A CERTIFIED COPY OF PRELIMINARY HEARING TESTIMONY."
 {¶ 14} In his Second Assignment of Error, Manning contends that the trial court erred in denying his request to admit into evidence a transcript of the victim's preliminary hearing testimony. The decision whether or not to admit evidence is left to the sound discretion of the trial court, and a reviewing court will not override that decision absent an abuse of discretion. State v. Hancock, 108 Ohio St.3d 57,2006-Ohio-160, ¶¶ 129-30, citations omitted. An abuse of discretion implies an unreasonable, arbitrary or unconscionable attitude by the court. Id. We conclude that the trial court did not abuse its discretion in excluding the transcript.
 {¶ 15} Before extrinsic evidence of a prior inconsistent statement may be offered pursuant to Evid. R. 613, a foundation must be established in which: (1) the witness is made aware of the inconsistent statement; (2) the witness is asked whether he made the statement; (3) the witness is permitted to admit, deny, or explain the statement; and (4) the opposing party is able to question the witness on the inconsistent statement.State v. Harris (Dec. 21, 1994), Montgomery App. No. 14343, citingState v. Theuring (1988), 46 Ohio App.3d 152, 155, 546 N.E.2d 436, dismissed 38 Ohio St.3d 709, 533 N.E.2d 359. If the witness admits making the prior inconsistent statement, there is no need for extrinsic evidence. Harris, supra, and Theuring, supra, at 155.
 {¶ 16} During the defense's cross-examination of Clark, counsel was permitted to use a certified transcript of Clark's preliminary hearing testimony to point out several inconsistencies with his trial testimony in an effort to attack his credibility. When shown *Page 6 
the transcript, Clark admitted giving the testimony. Accordingly, there was no need for extrinsic evidence to prove the inconsistencies, and the trial court did not abuse its discretion in denying Manning's request to admit the transcript into evidence. Therefore, Manning's Second Assignment of Error is overruled.
 IV {¶ 17} Manning's Third Assignment of Error is as follows:
 {¶ 18} "THE VERDICT OF THE JURY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 19} In his Third Assignment of Error, Manning claims that his convictions for Aggravated Robbery and Aggravated Burglary are against the manifest weight of the evidence. We disagree.
 {¶ 20} When reviewing a judgment under a manifest weight standard of review "[t]he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
 {¶ 21} Manning's defense to the charges against him was that either someone else took Clark's pills or that Clark had given them away and then blamed Manning so *Page 7 
that he would be able to have the medication replaced. His defense centered on attacks against Clark's credibility by pointing out the discrepancies between Clark's testimony given at the preliminary hearing and that given at trial and by emphasizing the differences between Clark's trial testimony and what he told the police who responded to his call.
 {¶ 22} For example, Manning makes much of the differences between the clothing that he was wearing when visiting Clark and when arrested, as opposed to the clothing reportedly worn by the assailant. Clark described Manning during his visit as wearing brown coveralls with unspecified clothes beneath, though at some point that afternoon, Manning had shown off his Jack Daniels boxers. Clark described the robber as wearing all dark clothes, including pants, jacket, work gloves and a bandanna. Clark also could see Jack Daniels boxers peeking through the open fly of Manning's pants. When Manning was arrested four hours later, he was wearing black jeans, partially covered by brown coveralls, which were pulled down around his waist. Manning appeared to be removing a black sweatshirt, and he had dark brown work gloves in his pocket. As the arresting officer testified, Manning met the suspect's description "very closely."
 {¶ 23} Manning also focuses on the discrepancies between Clark's trial testimony and his preliminary hearing testimony regarding the frequency of Manning's visits to Clark's home and the exact location of Manning when Jenny left Clark's home. Clark explained that although he said at the preliminary hearing that Manning had been over many times, Manning usually stayed outside and was only inside the home on a few occasions. He also clarified that Manning may have been down the hall when Jenny *Page 8 
left, but he was watching television when Clark fell asleep.
 {¶ 24} Finally, Manning points out differences between Clark's testimony and what he told the responding officer. Although the officer said that Clark told her he had hit the intruder with his picker upper, he testified at trial that he would have if he could have reached it. The officer stated that Clark had seen the intruder's knife from the start, while Clark explained that he first saw the knife after he turned on the light. There was also some question as to whether the knife was three inches long or four to five inches long. The jury was entitled to accept or reject Clark's explanations of these differences and to assess his credibility in light of them.
 {¶ 25} "Because the trier of fact sees and hears the witnesses and is particularly competent to decide `whether, and to what extent, to credit the testimony of particular witnesses,' we must afford substantial deference to its determinations of credibility." State v. Spears,178 Ohio App.3d 580, 899 N.E.2d 188, ¶ 12, quoting State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288. The jury's verdict reflects its conclusion that, despite the discrepancies, Clark's trial testimony was credible. We do not conclude that the factfinder clearly lost its way or that there was a manifest miscarriage of justice. Accordingly, Manning's convictions are not against the manifest weight of the evidence, and we will not disturb the jury's verdict.
 {¶ 26} Manning's Third Assignment of Error is overruled.
 V {¶ 27} All of Manning's assignments of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and GRADY, JJ., concur. *Page 1