[Cite as *State v. Gabriel*, 2011-Ohio-4664.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 24144 |
| v. | : | T.C. NO. 09CR3178 |
| RASHIED J. GABRIEL, JR. | : | (Criminal appeal from Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____16th____ day of _____September_____, 2011.

. . . . . . . . . .

KIRSTEN A. BRANDT, Atty. Reg. No. 0070162, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

JEFFREY T. GRAMZA, Atty. Reg. No. 0053392, Talbott Tower, Suite 1210, 131 N. Ludlow Street, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1}   Rashied Gabriel Jr. was found guilty by a jury of one count of aggravated robbery (deadly weapon), with a firearm specification.  He was sentenced to four years in prison on the aggravated robbery, with an additional three years of actual incarceration on

the firearm specification.   He appeals from his conviction.

I

{¶ 2}   On September 29, 2009, the two victims were robbed at gunpoint by two men while sitting in a car outside the Valerie Arms apartments in Dayton.   The victims reported to the police that one of the two perpetrators was someone with whom they had prior dealings; they provided the police with the offender's nickname and school.   Using this information, the police identified Gabriel as the suspect and put his photograph in a photo array.   The victims each identified Gabriel from the photo array.   No physical evidence was found to link Gabriel to the offense.   Gabriel was charged with one count of aggravated robbery, with a firearm specification.

{¶ 3}   Gabriel filed a motion to suppress the victims' identifications, arguing that the photo array was unduly suggestive.   The trial court overruled this motion.

{¶ 4}   Gabriel was tried by a jury which found him guilty of aggravated robbery and found that he had used a firearm in the commission of the offense.   He was sentenced as described above, and the trial court ordered that his sentence in this case run consecutively to the sentence imposed in another case (Case No. 2008 CR 4944).

{¶ 5}   Gabriel appeals from his conviction, raising two assignments of error.

II

{¶ 6}   Gabriel's first assignment of error states:

{¶ 7}   "THE IDENTIFICATION OF APPELLANT BY GOVERNMENT WITNESSES CORDELL AND BRANNON AROSE FROM PHOTOGRAPHIC LINEUPS THAT WERE UNDULY SUGGESTIVE AND VIOLATED APPELLANT'S

CONSTITUTIONAL RIGHT TO DUE PROCESS."

{¶ 8} Gabriel argues that the identification procedure used in this case was impermissibly suggestive because he was the only person in the photo array wearing "jail clothing." He claims that, in looking at the photo array, a witness's eyes "were naturally drawn to the photograph" of him.

{¶ 9} At the suppression hearing, Detective William Elholz testified that, on Monday, September 29, 2009, he began an investigation into an armed robbery that had occurred the previous weekend by interviewing the two victims of the offense, Joshua Brannon and Christopher Cordell. Brannon and Cordell told Detective Elholz that a man known to them as "Shied" was one of the two men who had robbed them. The men knew "Shied" from a past encounter; Cordell had purchased a "musical item or tech item" from "Shied." Cordell and Brannon told Detective Elholz that "Shied" was a student at TechCon, a school in Montgomery County.

{¶ 10} By providing a physical description and the nickname to someone at the school, Detective Elholz focused his investigation on Rashied Gabriel. Using a computer program, Detective Elholz assembled two, six-picture "photo spreads," each of which contained Gabriel's photo, and showed them separately to the victims. Brannon and Cordell each "immediately" identified Gabriel as one of the people who had robbed them.

{¶ 11} After considering the evidence presented at the suppression hearing, the trial court found that the photo arrays were "fair and not impermissibly suggestive." It explained:

{¶ 12} "There is no evidence that Cordell and Brannon had any opportunity to confer

or communicate with each other about the photo arrays they were shown. The use of the two different photo arrays prevented any communication between them, even if any occurred (and no evidence suggests any communication between them at the relevant time) from tainting Cordell's identification of Defendant in the second array.

{¶ 13} "The photo of Defendant used in the arrays shows him wearing a Montgomery County Jail inmate uniform. The other five photos show individuals dressed in street clothes. However, Defendant's photo is not otherwise different or distinguishable from the other photos in the array. Defendant's clothing in his photo does not draw disproportionate interest nor does it call out or highlight Defendant as a criminal or convict."

{¶ 14} "Due process requires suppression of pre-trial identification of a suspect only if the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification. *Neil v. Biggers* (1972), 409 U.S. 188, 196-97, 93 S.Ct. 375, 34 L.Ed.2d 401. To establish a due process violation, a defendant must prove that the out of court confrontation was 'unnecessarily suggestive and conducive to irreparable mistaken identification.' *Stovall v. Denno* (1967), 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199. However, even where the identification procedure is suggestive, so long as the challenged identification itself is reliable, it is still admissible. *State v. Moody* (1978), 55 Ohio St.2d 64. See *Manson v. Brathwaite* (1977), 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140, ('reliability is the linchpin in determining the admissibility of identification testimony')." *State v. Marshall*, Montgomery App. No. 19920, 2004-Ohio-778, ¶11.

{¶ 15} We review a trial court's refusal to suppress a pretrial identification for

an abuse of discretion. *State v. Wilson*, Montgomery App. No. 22624, 2009-Ohio-1038, ¶19

{¶ 16} The trial court acted within its discretion in concluding that the photo arrays used in this case were not unduly suggestive. The picture of Gabriel shows only his head and neck, with a blue collarless shirt layered over a white t-shirt. Although one familiar with the Montgomery County jail garb might be able to identify it as such, the small amount of clothing visible in Gabriel's photo is not styled in such a way as to be clearly identifiable as jail clothing. Further, the other five individuals all had collarless shirts and/or white t-shirts. The clothing did not draw undue attention to Gabriel, and there is no evidence that Brannon or Cordell recognized it as jail clothing.

{¶ 17} Moreover, Brannon and Cordell "immediately" identified Gabriel's picture, and he was known to them from a prior interaction. Even assuming, for the sake of argument, that the clothing in the picture was suggestive, the trial court could have reasonably concluded that the victims' identification of Gabriel was reliable.

{¶ 18} The first assignment of error is overruled.

III

{¶ 19} Gabriel's second assignment of error states:

{¶ 20} "THE JURY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AND THE EVIDENCE PRESENTED WAS INSUFFICIENT, AS A MATTER OF LAW, TO PROVE THE APPELLANT'S GUILT BEYOND A REASONABLE DOUBT."

{¶ 21} Gabriel claims that his conviction was supported by insufficient evidence and was against the manifest weight of the evidence.

{¶ 22} An argument based on the sufficiency of the evidence challenges whether the state has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. *State v. Thompkins* (1999), 78 Ohio St.3d 380, 386. The proper test to apply to such an inquiry is the one set forth in *State v. Jenks* (1991), 61 Ohio St.3d 259: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." Id., at paragraph two of the syllabus.

{¶ 23} In contrast, when reviewing a judgment under a manifest-weight standard of review "'[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175.

{¶ 24} Both of the victims testified at trial. They testified that Cordell had picked Brannon up from Kroger, where Brannon worked, in the late evening of

September 26, 2009, and the two men drove to the Valerie Arms apartments, where Brannon was staying with his mother. After the men sat in the car in the parking lot for twenty to thirty minutes, talking and smoking, a man armed with a semiautomatic handgun and wearing a bandana appeared in Cordell's window. Immediately thereafter, another man appeared with a gun at the passenger window (Brannon's window). The armed men instructed the victims to "Empty your pockets. Give me everything you got." The victims complied and were ordered out of the car. While the armed men searched the car, Cordell ran into a nearby wooded area, and Brannon lay on the ground. After waiting what "seemed like half an hour," Cordell ran to Kroger, called his father, and then returned to the Valerie Arms parking lot. Brannon had "walked off," as instructed by the armed men, and called the police.

{¶ 25} When the police arrived at the scene and two days later, when a detective was assigned to the case, Brannon and Cordell provided descriptions of the armed men and reported that they knew one of the men as "Shied," a student a TechCon Institute. Cordell had purchased an iPod from Gabriel and owed him money; Brannon had graduated from TechCon, but knew Gabriel through Cordell. The victims claimed that they recognized Gabriel by his voice, his braided hair, and his eyes.

{¶ 26} Based on the information provided by the victims, Detective Elzholz worked with a TechCon administrator to identify the suspect as Rashied Gabriel. Detective Elzholz created two photo arrays containing Gabriel's picture, and both

victims identified him as one of the perpetrators of the armed robbery.[1] At trial, both men expressed certainty that Gabriel was one of the men who had robbed them.

{¶ 27} Gabriel was charged with aggravated robbery. Specifically, it was alleged that in attempting or committing a theft offense, or in fleeing immediately after the attempt or offense, he had a deadly weapon (handgun) on his person or under his control and recklessly displayed or brandished the weapon. The testimony of the two victims established the elements of this offense and could "convince the average mind of the defendant's guilt beyond a reasonable doubt." Gabriel's conviction was supported by sufficient evidence.

{¶ 28} Gabriel claims that his conviction was against the weight of the evidence because of inconsistencies in the victims' statements and "no gun recovered, no fingerprints, no stolen money or property, no confessions." He asserts that Cordell's trial testmiony was contrary to his testimony at the preliminary hearing and, because no credible explanation was offered, "[n]o rational trier of fact would possibly have been able to determine *** which was the truth and which was a lie." He also claims that Brannon's identification was "so blatantly untruthful that any rational trier of fact would dismiss it out of hand."

{¶ 29} The victims acknowledged that some of their initial statements to the dispatcher or to the police were colored by being "scared." They also explained that, because they had not left the scene together, each was very apprehensive

---

[1] It appears from this record that the other man was never identified.

about the fate of the other during their initial contact with the police. (When Brannon first called the police, he was unsure what had happened to Cordell; when Cordell returned to the scene of the robbery and the police arrived, he was unsure what had happened to Brannon.) Cordell also admitted that he had been reluctant to testify at the preliminary hearing. Both were subjected to cross-examination, and the jury heard these explanations. The jury heard the testimony of the witnesses and saw their demeanor on the stand. Because the jury "is particularly competent to decide 'whether, and to what extent, to credit the testimony of particular witnesses,' we must afford substantial deference to its determinations of credibility." *State v. Spears,* 178 Ohio App.3d 580, 2008-Ohio-5181,¶12, quoting *State v. Lawson* (Aug. 22, 1997), Montgomery App. No. 16288. We cannot conclude that the jury clearly lost its way and created a manifest miscarriage of justice in weighing the evidence as it did. Gabriel's conviction was not against the manifest weight of the evidence.

{¶ 30} The second assignment of error is overruled.

IV

{¶ 31} The judgment of the trial court will be affirmed.

. . . . . . . . . .

GRADY, P.J. and CANNON, J., concur.

(Hon. Timothy P. Cannon, Eleventh District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Kirsten A. Brandt
Jeffrey T. Gramza

Hon. Mary L. Wiseman