OPINION
{¶ 1} Robert G. Like was found guilty by a jury in the Montgomery County Court of Common Pleas of three counts of aggravated murder, one count of aggravated robbery, and one count of kidnapping, each with a firearm specification, and two counts of tampering with evidence. He was sentenced to an aggregate term of life plus twenty-one years in prison. Like appeals from his *Page 2 
convictions.
 {¶ 2} The state's evidence at trial established the following facts.
 {¶ 3} On March 26, 2006, William Sampson spent much of the day at home with his younger brother while his mother was at the hospital with a relative. In the evening, he left his family's apartment in the Castlebrook apartment complex to meet Like, who lived in the same complex. His family never saw him alive again, and they had no information about his whereabouts for many days.
 {¶ 4} At approximately 10:30 — 11:00 p.m. on the same night, in a basement apartment of a building in the back of the Castlebrook apartment complex, Danetrice McCrea and her roommate, Sharon Denise Nash, heard loud, sharp sounds coming from an adjoining vacant apartment, #1103. McCrea compared the sound to kicking down a door, while Nash thought the sounds were gunshots. An upstairs resident, Michael Burton, also reported hearing gunfire that night. No one called the police. McCrea and Nash explained that the sound of gunshots was not uncommon in their neighborhood. McCrea and Nash testified that their apartment was the only apartment of the four on the bottom level of their apartment building that had been occupied at the time. McCrea further testified that she had seen four men, including Like, in apartment #1103 a few weeks earlier, and had smelled marijuana.
 {¶ 5} While Sampson was missing, the police questioned Like about his recent contact with Sampson. Like reported that he had spoken with Sampson on the date of his disappearance, but that he had not actually seen Sampson that day because he (Like) had been at Central State University ("CSU"), where he was a student. He claimed that Sampson had said he was going to "run around with some girls" that night. *Page 3 
 {¶ 6} On April 7 and 8, 2006, Burton noticed a lot of flies in apartment #1103 of his building. He noted that the flies were "blowflies," which he had encountered while working at a funeral home, not houseflies. When Burton investigated, he saw a dead body through the window of the apartment and called 911. When the police responded, they found a badly decomposed black male in the apartment. This person was later identified as Sampson. The door to the apartment was locked from the inside, and a bedroom window was ajar. A very small amount of money was found on the body, but the victim's pants pockets had been pulled out. Sampson's cell phone was found in the kitchen.
 {¶ 7} Forensic evidence established that Sampson had been shot three times, in the chest, neck, and head. Three empty cartridges were found at the scene, but no gun was ever found in connection with the shooting.
 {¶ 8} Several friends and acquaintances of Like and/or Sampson testified that they had overheard Like talking about shooting Sampson in the days following his disappearance. According to Deborah Woods, she overheard Like describe killing "William" but didn't know whether to believe him. In this conversation, Like stated that he had wiped down the apartment and left through a window, which then became jammed half open.
 {¶ 9} Eric Benson claimed to have heard a conversation between Like and El Welch in which they claimed that Sampson had robbed them a year earlier, prompting their decision to kill him. Benson claimed that he did not take the threat seriously until he heard that Sampson was missing. Benson also heard Like say that he had convinced Sampson to go with him by saying that girls would be there. According to Benson, Like had recounted that his gun jammed at first, causing him to pistol whip the victim before shooting him. Benson further reported that Sampson had *Page 4 
pleaded for his life and was shot first in the chest then in the head. Like claimed to have burnt some evidence and gotten rid of the gun.
 {¶ 10} Similarly, Welch testified that Like had wanted to "take Will out" because of their prior dealings with Sampson. Welch had not taken this claim seriously at first, but he admitted at trial that he had known Sampson was dead before the body was found. Welch testified that Like had admitted shooting Sampson twice, including once in the head, after Sampson had begged for his life. Like also admitted wiping down the victim's cell phone, which he had left in the apartment with the body.
 {¶ 11} Sampson's mother and his girlfriend testified that Sampson had been carrying several hundred dollars in cash at the time of his disappearance because he was planning to get his driver's license reinstated and had not been sure how much it would cost.
 {¶ 12} After Sampson's body was found, the police went to CSU and interviewed Like. According to Detective James Faulkner, Like seemed to know that they were there about Sampson's death. Like admitted that, on the night of March 26, 2006, he had set out for apartment #1103 with Sampson, expecting to meet some girls there. After making some calls on Sampson's cell phone which went unanswered, Like concluded that the girls were not coming. Nonetheless, the two men proceeded to the vacant apartment. Like claimed that he used the bathroom at the apartment and, when he emerged, Sampson was holding a gun on him. Like claimed that Sampson had robbed him a year earlier and had feared that Like would someday retaliate, so Sampson had decided to attack Like first. Like claimed that the two scuffled and that Sampson fired a shot at him, but missed. Like then took the gun away from Sampson and shot Sampson two times. Like claimed that he had searched Sampson for money but found none. He had been very nervous, had climbed out an *Page 5 
apartment window, and had called a friend to pick him up. Like disposed of the gun in a dumpster. He did not call the police and did not return to the apartment.
 {¶ 13} At trial, Like told a different version of events. He claimed that Welch and Benson had been plotting to rob Sampson, and they had asked him to help lure Sampson to the vacant apartment. Like claimed that he helped lure Sampson to the apartment, but that he did not go into the apartment himself; he returned to CSU instead. Like saw Welch with a gun, but Welch assured Like that he would not use it. Like said that, after the killing, Welch was nervous about "taking the fall" and threatened to kill Like's mother and sister if Like did not take responsibility. According to Like, Welch had supposed that no one would believe Like had committed the crime because he was not a troublemaker. When called as a rebuttal witness, Welch denied this version of events.
 {¶ 14} Like was indicted on three counts of aggravated murder, with firearm specifications, one count each of aggravated robbery and kidnapping, with firearm specifications, and two counts of tampering with evidence. He was tried by a jury on December 11-14, 2006. He was found guilty on all counts and all specifications. Like was sentenced to life terms on each of the aggravated murders. The court merged the robbery and kidnapping offenses and sentenced him to ten years. The court sentenced Like to five years on each count of tampering with evidence, to be served concurrent with each other but consecutive to the other sentences. The firearm specifications were merged on the aggravated murder counts, and the court imposed an actual term of three years on these counts. The court imposed an additional actual term of three years on the firearm specification connected with the aggravated robbery. The court ordered that each of the sentences on the firearm specifications was to be served consecutive to and prior to the other sentences.
 {¶ 15} Like raises three assignments of error on appeal. *Page 6 
 {¶ 16} "I. "THE COURT ERRED IN CONVICTING APPELLANT OF AGGRAVATED MURDER, AGGRAVATED ROBBERY, KIDNAPPING AND TAMPERING WITH EVIDENCE."
 {¶ 17} Like contends that all of his convictions are against the manifest weight of the evidence and are supported by insufficient evidence.
 {¶ 18} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different."State v. Thompkins (1997), 78 Ohio St.3d 380, 386, 1997-Ohio-52,678 N.E.2d 541. An appellate court's function when reviewing the sufficiency of the evidence is to determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus. When reviewing the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins, 78 Ohio St.3d at 387, citing State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility. State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288.
 {¶ 19} With respect to his convictions for aggravated murder, Like claims that his convictions were based on insufficient evidence. He does not argue, however, that there was an absence of evidence to support these convictions; rather, he contends that the evidence presented should not have been *Page 7 
believed. This type of argument challenges the weight of the evidence, not its sufficiency. Two of Like's convictions for aggravated murder were based on prior calculation and design and on the felony-murder rule (aggravated robbery). A rational trier of fact could have found the elements of the crimes-purposeful killing with prior calculation and design and killing in the course of an aggravated robbery-proven beyond a reasonable doubt based upon the evidence presented. As such, we reject Like's arguments that these convictions were based on insufficient evidence or were against the manifest weight of the evidence. We will address the aggravated murder based on the kidnapping below.
 {¶ 20} With respect to the kidnapping, aggravated robbery, and tampering with evidence offenses, Like argues that these convictions, in addition to being against the manifest weight of the evidence, were supported by insufficient evidence because of the state's failure to prove the corpus delicti of the crime. Specifically, with respect to the two counts of tampering with evidence, Like asserts that no evidence was presented — apart from his own statements — to establish that he had disposed of a weapon or had wiped away fingerprints at the scene of the crime. He also claims, with respect to the kidnapping and aggravated robbery charges, that the state failed to present any evidence other than his own statements.
 {¶ 21} There must be some evidence, outside of an accused's admissions, tending to establish the nature of the crime, or corpus delicti, before such admissions are admissible in evidence. State v.Curry (1952), 92 Ohio St. 1, 5, 109 N.E.2d 298, citing State v.Maranda (1916), 94 Ohio St. 364, 114 N.E. 1038. The corpus delicti of a crime is the body or the substance of the crime, included in which are usually two elements: the act, and the criminal agency of the act.State v. Black (1978), 54 Ohio St.2d 304, 307, 376 N.E.2d 948. The quantum of the evidence is not important as long as it tends to prove some material element of the offense charged outside of the *Page 8 
admissions of the accused. Curry, 92 Ohio St. at 5. In other words, "there must be some proof, not necessarily direct and positive, usually but circumstantial, tending to prove the fact that a crime was committed." State v. Nobles (1995), 106 Ohio App.3d 246, 262,665 N.E.2d 1137, 1147, quoting Maranda, 94 Ohio St. at 371.
 {¶ 22} With respect to the aggravated robbery charge, the state did not rely solely on Like's statements to support his conviction. Sampson's mother and girlfriend each testified that Sampson had been carrying a substantial sum of money on the day of his disappearance because he planned to get his driver's license reinstated. The police presented evidence that, when his body was found, the pockets of Sampson's pants were pulled out as if they had been searched. This evidence, coupled with Sampson's gunshot wounds, tended to prove that an aggravated robbery had been committed.
 {¶ 23} The tampering with evidence charges present a more difficult question. The offense of tampering with evidence is defined, in pertinent part, as follows: "No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation." R.C. 2912.12(A)(1). With respect to tampering with evidence, Like was convicted on two counts, one for disposing of the gun used to shoot Sampson and another for wiping down fingerprints in the apartment. We will address these counts in turn.
 {¶ 24} The state contends that the discovery of a dead body with bullet wounds at the apartment and the absence of the gun that inflicted those wounds were sufficient evidence of tampering with evidence by disposal of the gun to permit the use of Like's statements about disposal of the gun. We disagree. Although it is beyond dispute that the gun was removed from the scene of *Page 9 
the crime, no evidence was presented to support an inference that the gun was taken to impair its value or availability as evidence. Thus, the state failed to offer evidence, other than Like's own statement about throwing the gun into a dumpster, tending to prove the fact that the crime of tampering with evidence (the gun) was committed.
 {¶ 25} Like was also charged with and convicted of tampering with evidence based on the absence of fingerprints in the apartment. While it does not appear that any helpful fingerprints were found in the apartment or on the victim's cell phone, no testimony or other evidence was presented from the police or crime lab to support the theory that the apartment or phone was wiped down by Like. Moreover, the apartment was vacant, and some efforts had been made to prepare it for new tenants, as evidenced by testimony that paint cans were present in the apartment. The apparent lack of fingerprints in the apartment could have been attributable to cleaning and not to tampering with evidence. Thus, the circumstantial evidence that Like tampered with fingerprint evidence was at best very weak, and there was no direct evidence that he did so. Under these circumstances, the state should not have been permitted to use Like's statements about wiping down evidence.
 {¶ 26} Like also argues that the state did not present any evidence of kidnapping apart from his admissions. Although Like made statements to the police and his friends that he had lured Sampson to the apartment by telling him that some girls were meeting them there, he is correct in asserting that there was no independent evidence of this fact. Thus, the state failed to establish the corpus delicti of the kidnapping before using Like's statements to establish this crime.
 {¶ 27} We summarize the result of Like's meritorious corpus delicti claims as follows. His convictions for tampering with evidence and kidnapping will be vacated. Because the kidnapping conviction is supported by insufficient evidence, the third aggravated murder conviction *Page 10 
(felony-murder, kidnapping) must also be vacated. With respect to the aggravated robbery, we reject Like's argument that his conviction was based on insufficient evidence or was against the manifest weight of the evidence .
 {¶ 28} In an unrelated argument, Like also asserts under this assignment of error that the trial court should have instructed the jury on murder and involuntary manslaughter, in addition to aggravated murder, as he requested. He claims that the evidence could have supported a conviction on either of these lesser offenses.
 {¶ 29} At trial, Like claimed that he had helped to lure Sampson to the apartment, but that he had not entered the apartment himself. This version of events did not support a conviction on a lesser included offense of murder or involuntary manslaughter. Earlier, Like had told the police that he shot Sampson with Sampson's own gun in response to an attack instigated by Sampson at the apartment. He presented no evidence of this account at trial, however. Accordingly, there was no basis for the instructions on the lesser offenses.
 {¶ 30} The first assignment of error is sustained in part and overruled in part.
 {¶ 31} "II. "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS."
 {¶ 32} Like contends that his motion to suppress his statements to the police should have been granted because, under the circumstances, he did not make his statements voluntarily or waive his rights intelligently.
 {¶ 33} Initially, we must note that the transcript of the suppression hearing was not contained in the record presented to this court, nor does it appear that a transcript was ever filed. Absent a transcript of the hearing, we are constrained to presume the regularity of the proceedings below *Page 11 
unless the limited record for our review affirmatively demonstrates error. Banks v. Regan, Montgomery App. No. 21929, 2008-Ohio-188. Thus, we cannot thoroughly review this issue, but we will briefly discuss the evidence in the record before us that bears on the voluntariness of Like's statements. This evidence is gleaned from the trial testimony and the trial court's judgment.
 {¶ 34} Like was taken in for questioning in the early morning hours of April 11, 2006. Like claimed that he was awakened in his room by two armed CSU police officers at 2:00 a.m. and taken into custody. He claimed that he was then taken back to Trotwood for questioning, which took place from 5:00 a.m. until 6:45 a.m. He asserted that he was not offered food, drink, or an opportunity to use the restroom or to make a phone call throughout these five hours. He claimed that he repeatedly asked for an attorney, to no avail. He also claimed that he was groggy and nervous and believed that he was acknowledging his rights, rather than waiving them. He pointed out that he had never been in trouble with the law previously.
 {¶ 35} According to Detective James Faulkner, one of the interrogating officers, he and another officer picked up Like at CSU at approximately 3:00 a.m. and took him back to the Trotwood police station. He was advised of his rights, indicated that he understood them, initialed and signed the necessary forms, and then agreed to answer questions. Like understood the process and agreed to participate. Faulkner testified that the entire process, including setting up the recording equipment and a couple of breaks, took approximately two hours; the actual interview lasted approximately one hour. Like did not ask for an attorney or ask to stop the interview during this time.
 {¶ 36} Based on our limited review, the trial court appears to have reasonably concluded that Faulkner's version was more credible and that Like's statement had been given voluntarily. *Page 12 
Specifically, the court found no credible evidence that Like had been "pressured, harassed, coerced, deceived, threatened, or harmed to induce him to waive his Miranda rights and make the statement" to the police. Because this conclusion seems to have been supported by the evidence, the trial court did not err in refusing to suppress Like's statements.
 {¶ 37} The second assignment of error is overruled.
 {¶ 38} "III. "THE TRIAL COURT ERRED IN ITS SENTENCING OF APPELLANT."
 {¶ 39} Like claims that the trial court erred in failing to merge all of the firearm specifications at sentencing. It merged the firearm specifications on the aggravated murder counts but sentenced Like to an additional three year term on the firearm specification connected with the aggravated robbery and kidnapping charges. In its response, the state argues that the kidnapping was a separate "transaction" designed to terrorize Sampson before killing him and that, as such, the firearm specification attached to the kidnapping need not merge with those tied to the murder. Because we have held, above, that the kidnapping conviction will be vacated, we will discuss this argument only with respect to whether the trial court could have properly refused to merge the firearm specification tied to the aggravated robbery with the specifications tied to the aggravated murders.
 {¶ 40} R.C. 2929.14(D)(1)(a)(ii) imposes a mandatory three-year prison term when a defendant is convicted of a firearm specification pursuant to R.C. 2941.145. However, a court is not authorized to impose more than one sentence for multiple firearm specifications if the specifications refer to the same criminal act or transaction. R.C. 2929.14(D)(1)(b);State v. Adams, Mahoning App. No. 00CA211, 2006-Ohio-1761, ¶ 52. The test is not whether there was a separate animus for each offense; the approriate consideration is whether the defendant "had a common purpose in *Page 13 
committing multiple crimes" and engaged in a "single criminal adventure." Adams at ¶ 54, 57. See, also, State v. Moore,161 Ohio App.3d 778, 832 N.E.2d 85, 2005-Ohio-3311.
 {¶ 41} In our view, the aggravated murders and aggravated robbery of which Like was convicted did not have separate purposes so as to support two separate gun specifications. A murder for revenge appears to have been the primary motive, and the robbery was likely a crime of opportunity incident to the murder. As such, the trial court erred in failing to merge all of the gun specifications.
 {¶ 42} The third assignment of error is sustained.
 {¶ 43} The judgment of the trial court will be affirmed in part and reversed in part. The following convictions will be vacated: tampering with evidence (fingerprints), tampering with evidence (gun), kidnapping, and aggravated murder (kidnapping). Vacating these convictions will shorten Like's sentence by five years, the concurrent terms imposed for each count of tampering with evidence. The judgment will also be modified to reflect the merger of all of the gun specifications. This modification will shorten the sentence by three years.
BROGAN, J. and GRADY, J., concur.
Copies mailed to:
Carley J. Ingram
Patrick J. Conboy II
 Hon. Mary L. Wiseman *Page 1