[Cite as *State v. Mabra*, 2015-Ohio-5493.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 2014-CA-147 |
| | : | |
| v. | : | Trial Court Case No. 2014-CR-0558 |
| | : | |
| AARION MABRA | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 29th day of December, 2015.

. . . . . . . . . .

RYAN A. SAUNDERS, Atty. Reg. No. 0091678, Assistant Clark County Prosecuting Attorney, 50 East Columbia Street, Fourth Floor, Springfield, Ohio 45502
    *Attorney for Plaintiff-Appellee*

BRIAN D. BRENNAMAN, Atty. Reg. No. 0088988, 1616 Turner Road, Xenia, Ohio 45385
    *Attorney for Defendant-Appellant*

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} In this case, Defendant-Appellant, Aarion Mabra, appeals from his conviction and sentence for Discharge of a Firearm on or near Prohibited Premises, with a firearm specification, a third-degree felony; Tampering with Evidence, a third-degree felony; and Improper Handling of Firearms in a Motor Vehicle, a fourth-degree felony. Following a jury trial, Mabra was convicted of all three offenses, and the trial court sentenced him to mostly maximum and consecutive sentences, for a total sentence of ten years in prison.

{¶ 2} In support of his appeal, Mabra contends that the Tampering conviction is based on insufficient evidence and is also against the manifest weight of the evidence. He also contends that the conviction for Discharging a Firearm is against the manifest weight of the evidence. Finally, Mabra contends that the court erred in sentencing him to maximum and consecutive sentences.

{¶ 3} We conclude that the conviction for Tampering with Evidence is not supported by sufficient evidence. However, the conviction for Discharging a Firearm is not against the manifest weight of the evidence. We further conclude that the trial court did not err in sentencing Mabra to maximum and consecutive sentences.

{¶ 4} Accordingly, the judgment of the trial court will be reversed in part and affirmed in part. The following conviction will be vacated: Tampering with Evidence. Vacating this conviction will shorten Mabra's sentence by three years, the consecutive term imposed for Tampering with Evidence, and this cause will be remanded to the trial court for further hearing.

## I. Facts and Course of Proceedings

{¶ 5} In June 2014, Pastor Sim Bowen was at the Clark Gas Station conducting an outreach ministry with his wife and a nurse. Bowen and others greeted people at the gas station, passed out cards, and prayed with some people. At about 9:30 p.m., a car pulled in, with the tires squealing. The car went between some gas pumps, locked the brakes, and slid before it hit the front of the building. One of the occupants (later identified as Mabra), jumped out, yelling and disturbing the customers.

{¶ 6} Bowen walked over to the car and one of the occupants greeted him. Mabra, who was sitting on the car hood, jumped off and confronted Bowen. Mabra "chest-bumped" Bowen and told him that he did not believe the way Bowen believed. When Bowen told Mabra to stop cursing and calm down, Mabra said, "I got something for you." Transcript of Proceedings, p. 101. Mabra went to the driver's side of the car, reached between the seats, and pulled out a pistol. After the people with Mabra told him to stop, Mabra put the pistol in his pocket.

{¶ 7} Mabra then gave Bowen a card that another outreach person had given him. Mabra told Bowen that he did not believe in God, and Bowen responded that he needed to, because of the way he was acting. After some further confrontation, Mabra went into the store.

{¶ 8} At that point, the other two people in the car with Mabra apologized to Bowen. However, when Mabra came out of the store, a confrontation ensued with another person at the gas station. Mabra stated, "M-fer, I told you I'd kill you if I see you again." *Id.* at p. 104. At first, Bowen thought Mabra was speaking to an older man, but when the man

stepped aside, Mabra went around him and was talking to a young man. Mabra pointed his gun right at the young man's forehead and pulled the trigger. Bowen could hear the gun echo, but it jammed. When that happened, the young man dropped to the ground and crawled across the parking lot.

{¶ 9} Mabra got in his car and left the station, with the occupants still in the car. Bowen, his wife, and the nurse, then got in Bowen's car and followed Mabra down Selma Road (the gas station was located at the corner of Selma Road and East Avenue). During the pursuit, the people in Bowen's car were calling 911.

{¶ 10} Bowen was close to Mabra's car, and followed him to Tibbets Avenue. Mabra turned right on Tibbets Avenue, which was "pitch black." Bowen testified that as soon as Mabra turned, Mabra stuck his hand out of the car. The hand looked like it was straight up. Bowen saw a flash and heard a pop. As soon as that happened, bystanders on both sides of the road "freaked out." When Bowen informed the 911 operator that a gun had just been shot, he was told to back off. As a result, Bowen slowed down a bit and lost sight of Mabra for a moment. Bowen heard, but did not see, other shots.

{¶ 11} Subsequently, Bowen saw Mabra's car parked around a corner, and saw Mabra standing in the middle of the road. Mabra did not have anything in his hands. Both of the other occupants of the car ran away, in different directions. Bowen then drove away from the scene, went up the road, and turned around.

{¶ 12} When Bowen drove away, Mabra was standing in the middle of the road. At that point, Springfield Police Officer, Joe Robinson, who had been dispatched to the scene, arrived. Robinson yelled at Mabra to stop, but Mabra, who was close enough to

hear Robinson, went into a house located on Harrison Street.

{¶ 13} Robinson first observed Mabra when he was standing next to his vehicle in the middle of the street. Robinson stated that Mabra did not drop anything. Mabra had his shirt off and appeared to be carrying what looked like a shirt. After Mabra rushed into the house and closed the door, Robinson waited for other officers to respond.

{¶ 14} Mabra's mother, Harriet, was home that evening, watching television, when Mabra came in the front door. He handed her his electronic tablet and said he had to use the restroom. The restroom was the only place Mabra went after he arrived.

{¶ 15} Immediately after Mabra went into the restroom, there was a knock at the front door. When Harriet answered the door, an officer asked her if a young man had just come into the house. Harriet told the officer yes, it was her son, and he was in the restroom. The officer then came in and stood by the restroom. About five or six minutes later, Mabra said he was coming out. He then came out of the restroom with his hands up. The officer left with Mabra, and a sheriff came in and searched the restroom. However, nothing was found. The police did not search any other part of the house.

{¶ 16} After Mabra was placed into custody at the house, the police asked Bowen if Mabra was "the guy." There was no type of lineup or photo lineup – Mabra was the only suspect present. Bowen identified Mabra and left the scene.

{¶ 17} A search of the car did not produce the gun or any shell casings. Officers also found nothing when they searched the route that Mabra traveled that night. In addition, a K-9 unit that was present did not find anything.

{¶ 18} After being given *Miranda* warnings, Mabra was asked about the gun. Mabra admitted driving, and said there may have been some gunfire. Mabra then said,

"Well, what if somebody else had the gun? Well, what are we looking at with the gun things?" Transcript of Proceedings, p. 85.

{¶ 19} Mabra was subsequently charged with Discharge of a Firearm on or near Prohibited Premises in violation of R.C. 2923.162(A)(3), a third-degree felony, plus a firearm specification; Tampering with Evidence in violation of R.C. 2921.12(A)(1), a third-degree felony; and Improper Handling of Firearms in a Motor Vehicle in violation of R.C. 2923.16(B), a fourth-degree felony. Prior to trial, the State offered to let Mabra plead guilty to Improper Handling of Firearms in a Motor Vehicle, with a presentence investigation. Mabra rejected the offer, and was found guilty, after a jury trial, of all three charges. The trial court imposed three years (the maximum) for discharging a firearm, three years on the gun specification, three years (the maximum) for tampering with evidence, and one year for improperly handling a firearm in a vehicle. The court imposed the sentences consecutively, for a total of ten years in prison. Mabra now appeals from his conviction and sentence.

## II. Conviction for Tampering with Evidence

{¶ 20} Mabra's First Assignment of Error states that:

The Trial Court Erred in Convicting the Appellant for Tampering with Evidence, as the Evidence is Insufficient and Is Against the Manifest Weight of the Evidence.

{¶ 21} Under this assignment of error, Mabra contends that there is insufficient evidence to indicate that he knew an investigation was in progress, and that there is insufficient evidence to establish that he removed the firearm from the vehicle, or did so

with purpose to impair the investigation. For the same reasons, Mabra also argues that the jury lost its way in finding him guilty of this charge.

{¶ 22} "A sufficiency-of-the-evidence argument challenges whether the state has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law." *State v. Cherry*, 171 Ohio App.3d 375, 2007-Ohio-2133, 870 N.E.2d 808, ¶ 9 (2d Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "The proper test to apply to the inquiry is the one set forth in paragraph two of the syllabus of *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492: 'An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Cherry* at ¶ 9.

{¶ 23} In contrast, "[w]hen a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8, quoting *Thompkins* at 387. "A judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence

weighs heavily against the conviction.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 24} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. As a result, "a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

{¶ 25} The conviction for Tampering with Evidence was based on the absence of the gun. As was noted, Mabra was charged with having violated R.C. 2921.12(A)(1), which provides that:

> (A) No person, knowing that an official proceeding or investigation is
>
> in progress, or is about to be or likely to be instituted, shall do any of the
>
> following:

> (1) Alter, destroy, conceal, or remove any record, document, or thing,
>
> with purpose to impair its value or availability as evidence in such
>
> proceeding or investigation * * *.

{¶ 26} After reviewing the evidence, we conclude that it was insufficient to prove the conviction for tampering. We addressed a similar situation in *State v. Like*, 2d Dist. Montgomery No. 21991, 2008-Ohio-1873. In *Like*, the victim was shot three times in the chest. Empty cartridges were found at the scene, but no gun was ever found. *Id.* at ¶ 7.

{¶ 27} At trial, evidence was presented from an acquaintance of the defendant,

who heard him state that he had gotten rid of the gun that was used to shoot the victim. *Id.* at ¶ 9. The defendant also told the police that he had disposed of the gun in a dumpster. *Id.* at ¶ 12. At trial, the defendant denied being involved in the shooting. *Id.* at ¶ 13. On appeal, we agreed with the defendant that there was insufficient evidence to support his conviction for tampering with evidence.

{¶ 28} We first noted that:

There must be some evidence, outside of an accused's admissions, tending to establish the nature of the crime, or corpus delicti, before such admissions are admissible in evidence. *State v. Curry* (1952), 92 Ohio St. 1, 5, 109 N.E.2d 298, citing *State v. Maranda* (1916), 94 Ohio St. 364, 114 N.E. 1038. The corpus delicti of a crime is the body or the substance of the crime, included in which are usually two elements: the act, and the criminal agency of the act. *State v. Black* (1978), 54 Ohio St.2d 304, 307, 376 N.E.2d 948. The quantum of the evidence is not important as long as it tends to prove some material element of the offense charged outside of the admissions of the accused. *Curry*, 92 Ohio St. at 5, 110 N.E. 631. In other words, "there must be some proof, not necessarily direct and positive, usually but circumstantial, tending to prove the fact that a crime was committed." *State v. Nobles* (1995), 106 Ohio App.3d 246, 262, 665 N.E.2d 1137, 1147, quoting *Maranda*, 94 Ohio St. at 371, 114 N.E. 1038.

*Like* at ¶ 21.

{¶ 29} In concluding that the evidence was not sufficient for a tampering conviction, we commented that:

The state contends that the discovery of a dead body with bullet wounds at the apartment and the absence of the gun that inflicted those wounds were sufficient evidence of tampering with evidence by disposal of the gun to permit the use of Like's statements about disposal of the gun. We disagree. Although it is beyond dispute that the gun was removed from the scene of the crime, no evidence was presented to support an inference that the gun was taken to impair its value or availability as evidence. Thus, the state failed to offer evidence, other than Like's own statement about throwing the gun into a dumpster, tending to prove the fact that the crime of tampering with evidence (the gun) was committed.

*Like*, 2d Dist. Montgomery No. 21991, 2008-Ohio-1873, at ¶ 24.

{¶ 30} In the case before us, the only evidence presented was that Mabra fired a shot or shots from the automobile. After the car stopped, two occupants ran from the scene, and Mabra was observed standing in the street, without a weapon in his hands. Mabra then went directly into his home, and no weapon was found in the car, on Mabra, or on the premises. Under the circumstances, one might assume that one of the occupants took the gun. However, there was no evidence that Mabra had anything to do with that act. Thus, as in *Like*, "no evidence was presented to support an inference that the gun was taken [by Mabra] to impair its value or availability as evidence." *Like* at ¶ 24. Moreover, in contrast to the defendant in *Like*, Mabra did not even confess to having disposed of the gun.

{¶ 31} We further noted in *State v. Sims*, 2d Dist. Clark No. 2008-CA-92, 2009-Ohio-5875, that "[i]n short, *Like* stands for the proposition that the mere removal of a

weapon from the scene of a crime, in the absence of any evidence that the purpose of the removal was to impair its value or availability, is insufficient to prove the corpus delicti of tampering with evidence." *Id.* at ¶ 25.

{¶ 32} "The inability of law enforcement to find the gun used in a shooting, by itself, does not show that the defendant 'altered, destroyed, concealed, or removed' it." *State v. Beard*, 6th Dist. Wood No. WD-08-037, 2009-Ohio-4412, ¶ 18, quoting *State v. Wooden,* 86 Ohio App.3d 23, 27, 619 N.E.2d 1132 (8th Dist.1993). In *Beard*, the court of appeals noted that "The state relied on a faulty syllogism: Witnesses saw Beard fire a gun. The gun was never found. Therefore, Beard must have tampered with the gun in order to make it unavailable as evidence against him. This was the extent of the evidence used to prove tampering. It is clearly insufficient to meet the standard applied by *Wooden*, *Spears*, and *Like*. Since the evidence was insufficient to support a tampering conviction, the conviction must be vacated." *Id.* at ¶ 20, citing *Like at* ¶ 24, and *State v. Spears*, 178 Ohio App.3d 580, 2008-Ohio-5181, 899 N.E.2d 188 (2d Dist.).

{¶ 33} Seeing no distinction between the above cases and the case at hand, we conclude that the conviction for tampering was not supported by sufficient evidence. In view of this conclusion, we need not consider whether the judgment was against the manifest weight of the evidence. Accordingly, the First Assignment of Error is sustained.

III. Conviction for Discharging a Firearm

{¶ 34} Mabra's Second Assignment of Error states that:

Trial Court Erred in Convicting the Defendant for Violation of R.C. 2923.162(A)(3) as the Conviction Is Against the Manifest Weight of the

Evidence.

**{¶ 35}** Under this assignment of error, Mabra contends that his conviction for Discharge of a Firearm is against the manifest weight of the evidence. In particular, Mabra argues that he was not seen discharging the firearm because it was dark. Instead, all the witness, Bowen, could see was an arm to the elbow and flashes.

**{¶ 36}** As was noted, "[w]hen a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, at ¶ 8, quoting *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

**{¶ 37}** R.C. 2923.162 provides, in pertinent part, that "(A) No person shall do any of the following: * * * (3) Discharge a firearm upon or over a public road or highway." In addition to alleging a violation of the statute, the indictment alleged that Mabra's conduct caused a substantial risk of harm to any person, making the crime a third degree felony pursuant to R.C. 2923.162(C)(2).

**{¶ 38}** The evidence at trial indicated that Mabra was the individual in possession of the gun during a confrontation at the gas station, and that the two individuals with Mabra apologized to Pastor Bowen for Mabra's actions. As Mabra suggests, Bowen did indicate during his testimony that he saw an arm come from the driver's side and that it was "pitch black out" when the shot was fired. Transcript of Proceedings, pp. 104-105. However, the following exchange also occurred during Bowen's testimony:

Q. I want to stop you right there. When you described this [referring to the incident at the gas station and the subsequent firing of the gun], Mr. Mabra gets back in the driver's seat of that vehicle, correct?

A. That's correct.

Q. And at this point then you're actually out on the roadway driving through the City of Springfield?

A. Yes, sir.

Q. Where are you at compared to his location when you see this stuff happen?

A. Right on his bumper.

Q. Then at some point during your travels you say you see an arm come out the window. How are you able to see that?

A. Well, since we turned it was – Selma Road was lit by the church. As soon as he turned, he stuck his hand out. It was pitch black and when he shot one round, I could see the flash and you could see him pointing it.

As soon as that happened, that's when the people were on both sides of the road, all kind of freaked out, staring at us. And we are on 911 the whole time.

Transcript of Proceedings, p. 105. Bowen also identified Mabra to the police as the shooter. *Id.* at p. 121.

**{¶ 39}** During the above remarks, Bowen is clearly referring to Mabra, and we conclude that the conviction for discharging a firearm is not against the manifest weight of the evidence. The jury was in the best position to judge credibility and to decide what

weight to give the testimony. *State v. Grissom*, 2d Dist. Montgomery No. 25750, 2014-Ohio-857, ¶ 24. Furthermore, while some of the evidence may have been circumstantial, " 'circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, [and] all that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt.' " *Id.* at ¶ 25, quoting *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991).

{¶ 40} Based on the preceding discussion, the Second Assignment of Error is overruled.

IV. Alleged Error in Sentencing

{¶ 41} Mabra's Third Assignment of Error states that:

The Trial Court Erred in Sentencing Defendant to the Maximum and Consecutive Terms of Imprisonment for Each Offense as the Record Clearly and Convincingly Does Not Support the Trial Court's Findings.

{¶ 42} Under this assignment of error, Mabra contends that the trial court erred in sentencing him because his offenses were not the worst form of the offense, there were no physical injuries, he has no adult felony or misdemeanor convictions, and he has a probable drug and alcohol problem. In response, the State argues that the sentence was within statutory guidelines; that the trial court took Mabra's prior history into consideration; and that the court properly took notice of the fact that Mabra had pointed a gun at someone at the gas station and had pulled the trigger.

{¶ 43} When we review felony sentences, we no longer use an abuse-of-discretion standard of review. *State v. Gilbert*, 2d Dist. Clark No. 2014-CA-116, 2015-Ohio-4509,

¶ 5, citing *State v. Rodeffer*, 2013-Ohio-5759, 5 N.E.3d 1069, ¶ 29 (2d Dist.). Instead, we apply the standard of review in R.C. 2953.08(G)(2), which states that, after reviewing the record:

> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929. 20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

{¶ 44} R.C. 2929.14(C)(4) provides that:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses

while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶ 45}** We have indicated that:

There are two ways that a defendant can challenge consecutive sentences on appeal. First, the defendant can argue that consecutive sentences are contrary to law because the court failed to make the necessary findings required by R.C. 2929.14(C)(4). *See* R.C. 2953.08(G)(2)(b); [*State v.*] *Bonnell* [,140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659,] at ¶ 29 ("When imposing consecutive sentences, a trial court must state the required findings as part of the sentencing hearing."). Second, the defendant can argue that the record does not support the findings made under R.C. 2929.14(C)(4). *See* R.C. 2953.08(G)(2)(a); *State v. Moore*, 2014-Ohio-5135, 24 N.E.3d 1197 (8th Dist.) (record did not support the imposition of consecutive sentences).

*State v. Adams*, 2d Dist. Clark No. 2014-CA-13, 2015-Ohio-1160, ¶ 17.

**{¶ 46}** "When imposing consecutive sentences, a trial court must state the required findings as part of the sentencing hearing, and by doing so it affords notice to the offender and to defense counsel." (Citation omitted.) *Bonnell* at ¶ 29. "And because a court speaks through its journal, * * * the court should also incorporate its statutory findings into the sentencing entry. However, a word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." (Citation omitted.) *Id.*

**{¶ 47}** In *Adams*, we concluded that the sentence was not contrary to law, because the trial court made the findings required by R.C. 2929.14(C)(4) using the statutory language. *Adams* at ¶ 18. We did suggest that "an explanation of the rationale (both case-specific and statutory) for a sentence can only increase the public understanding of a particular sanction and thus the perceived legitimacy of the criminal justice system." (Citation omitted.) *Id.*

**{¶ 48}** In the case before us, the trial court used statutory language during the sentencing hearing, by stating that consecutive sentences were not disproportionate to the seriousness of Mabra's conduct and that Mabra's history of delinquent conduct indicated that consecutive sentences were necessary to protect the public from future crime. Transcript of Sentencing Proceedings, p. 12. Thus, as in *Adams*, we cannot conclude that the sentence was contrary to law.

**{¶ 49}** We also cannot find that the record clearly and convincingly fails to support the trial court's imposition of consecutive sentences. In *State v. Foster*, 109 Ohio St.3d

1, 2006-Ohio-856, 845 N.E.2d 470, the Supreme Court of Ohio noted that "R.C. 2929.14(E)(4) and 2929.19(B)(2)(c) require trial courts that impose consecutive sentences to make the statutorily enumerated findings and to give reasons at the sentencing hearing to support those findings for review on appeal." *Id.* at ¶ 66, citing *State v. Comer*, 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473. *See also Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, where the court observed that "former R.C. 2929.19(B)(2)(c) directed the sentencing court to 'make a finding that gives its reasons for selecting the sentence imposed' if it imposed consecutive sentences." *Id.* at ¶ 16, quoting Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, at 7486.

**{¶ 50}** The Supreme Court of Ohio concluded in *Foster* that this kind of judicial fact-finding violates the Sixth Amendment right to trial by jury. Consequently, the court invalidated several provisions relating to felony sentencing. *See Foster* at ¶ 82-83; *Bonnell* at ¶ 17. After *Foster* was decided, the United States Supreme Court concluded otherwise in *Oregon v. Ice*, 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009).

**{¶ 51}** Specifically, the Supreme Court of the United States held in *Ice* that trial judges are constitutionally permitted to make findings of fact. *Id.* at 164. Despite the holding in *Ice*, the Supreme Court of Ohio later held that the sentencing provisions deemed unconstitutional in *Foster* would remain invalid unless the General Assembly enacted new legislation requiring judicial findings. *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768, paragraphs two and three of the syllabus.

**{¶ 52}** H.B. 86, which was enacted in 2011, revived some of the statutory language severed in *Foster*. *Bonnell* at ¶ 4. As an example, the enactment of H.B. 86 "created a statutory presumption in favor of concurrent sentences and further directed courts to

make statutorily enumerated findings prior to imposing consecutive sentences, but it did not require courts to give reasons in support of its findings." *Id.* Accordingly, even under statutes that have been revived or reenacted, trial courts are not required to give reasons for their decisions.

{¶ 53} In *Bonnell*, the court considered R.C. 2929.14(E)(4), pertaining to consecutive sentences, which was revived and renumbered as R.C. 2929.14(C)(4). *Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at ¶ 22. The court noted that the legislature had reinstated the requirement of judicial fact-finding for purposes of overcoming the presumption in favor of concurrent sentences. *Id.* at ¶ 23. However, when the statute was reenacted and renumbered, the legislature eliminated the requirement that trial courts give reasons for imposing consecutive sentences. *Id.* at ¶ 27. As a result, a trial court's duty is only to state the required statutory findings at the sentencing hearing and incorporate these findings into the judgment entry. *Id.* at ¶ 29. In addition, the Supreme Court of Ohio stressed that "a word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.*

{¶ 54} Furthermore, both before and after the *Foster* decision, R.C. 2929.11 has not mandated that trial courts give reasons or make specific findings. Instead, R.C. 2929.11 has only discussed principles that trial courts must be guided by, like the purposes of felony sentencing, and matters the trial court is supposed to consider, like deterrence and rehabilitation. Compare S.B. 2, 1995 Ohio Laws 50, Part 3, with the current version of R.C. 2929.11.

**{¶ 55}** } Likewise, R.C. 2929.12, both when enacted as part of S.B. 2 in 1995, and as currently constituted, does not require trial courts to make specific findings or give reasons for their decisions. To the contrary, the statute only requires courts to consider factors pertaining to the seriousness of an offender's conduct and the likelihood that the offender will commit future crimes. Compare S.B. 2, 1995 Ohio Laws 50, Part 3, with the current version of R.C. 2929.12.

**{¶ 56}** Trial courts, therefore, are required to consider the factors set forth in R.C. 2929.12, but they need not articulate their considerations explicitly on the record. Our district and the Supreme Court of Ohio have held that even a silent record raises the presumption that the trial court considered the factors contained in R.C. 2929.12. *See State v. Adams*, 37 Ohio St.3d 295, 525 N.E.2d 1361 (1988), paragraph three of the syllabus, noting that "[a] silent record raises the presumption that a trial court considered the factors contained in R .C. 2929.12." *Accord State v. Carlton*, 2d Dist. Montgomery No. 26086, 2014-Ohio-3835, ¶ 18 (observing that "we have held on more than one occasion that a trial court's consideration of the statutory sentencing factors may be presumed from a silent record."); *State v. Imber*, 2d Dist. Clark No. 11-CA-0063, 2012-Ohio-3720, ¶ 26; *State v. Neff*, 2d Dist. Clark No. 2012-CA-31, 2012-Ohio-6047, ¶ 5; and *State v. Gibson*, 2d Dist. Champaign No. 2012-CA-38, 2013-Ohio-2930, ¶ 35. *See also State v. Thomas*, 2d Dist. Montgomery No. 26123, 2014-Ohio-5262, ¶ 22 (following *Carlton* and noting that "R.C. 2929.11 and R.C. 2929.12 do not require findings on the record * * *.")

**{¶ 57}** In the case before us, the trial court stated at the sentencing hearing that consecutive sentences were not disproportionate to the seriousness of Mabra's conduct

and that Mabra's history of delinquent conduct indicated that consecutive sentences were necessary to protect the public from future crime. Transcript of Sentencing Proceedings, p. 12. On the subject of Mabra's prior history, the court observed that the 19-year-old Mabra had no adult convictions, but had prior juvenile adjudications for assault in 2007, followed by a probation violation and a receiving stolen property adjudication in 2011. The 2011 adjudication was followed by three probation violations in 2011, an adjudication of delinquency for assault in 2011, while Mabra was still on probation, and two more probation violations in 2012. These latter violations resulted in imposition of a 90-day stay in a detention facility.

**{¶ 58}** More troubling yet is the fact, evident in the record before the court, that but for the jamming of the gun, Mabra would likely be facing a separate murder charge or perhaps an aggravated assault charge if the victim at the gas station had been lucky enough to survive a direct shot to the head.

**{¶ 59}** Courts consider a broad range of information when imposing sentence. *State v. Bowser*, 186 Ohio App.3d 162, 2010-Ohio-951, 926 N.E.2d 714, ¶ 13 (2d Dist.). *Accord State v. Beverly*, 2d Dist. Clark No. 2015-CA-8, 2015-Ohio-4710, ¶ 7. "The evidence the court may consider is not confined to the evidence that strictly relates to the conviction offense because the court is no longer concerned, like it was during trial, with the narrow issue of guilt." *Bowser* at ¶ 14, citing *Williams v. New York*, 337 U.S. 241, 246-247, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). In the case before us, the circumstances surrounding the crime demonstrate that Mabra was a dangerous individual and that consecutive sentences were necessary to protect the public.

**{¶ 60}** Accordingly, the record supports the trial court's decision that consecutive

sentences were necessary to protect the public from future offenses and to punish Mabra for discharging a weapon and for improperly handling a weapon in an automobile.

**{¶ 61}** The other issue raised under this assignment of error is whether the trial court erred in imposing maximum sentences.   The court imposed the maximum sentence on two charges (for discharging a firearm and tampering with evidence), and less than the maximum (for improperly handling a firearm in a vehicle).   We have already reversed the tampering conviction and need not address that matter further.   The remaining issue is whether the court erred in imposing the maximum sentence for discharging a firearm.

**{¶ 62}** "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences."   (Citation omitted.) *State v. Nelson*, 2d Dist. Montgomery No. 25026, 2012-Ohio-5797, ¶ 62.   *Accord State v. Terrel*, 2d Dist. Miami No. 2014-CA-24, 2015-Ohio-4201, ¶ 14.   Nonetheless, the court "must comply with all applicable rules and statutes, including R.C. 2929.11 and R.C. 2929.12." *Nelson* at ¶ 62.

**{¶ 63}** The trial court stated in its sentencing entry that it had considered the principles and purposes of sentencing under R.C. 2929.11 and had balanced the seriousness and recidivism factors under R.C. 2929.12.   Doc. #20, p. 1.   The sentence was within the statutory range, and the court considered Mabra's prior criminal history, which indicated that Mabra did not respond favorably to prior sanctions.   Unlike the defendant in *Terrel*, Mabra has not even suggested that his sentence is inconsistent with sentences imposed for similar crimes.   *Terrel* at ¶ 16.   Even if Mabra had made this argument, we concluded in *Terrel* that offenders cannot merely present other cases

where defendants have received lesser sentences; they must show that the trial court failed to properly consider the sentencing criteria in R.C. 2929.11 and R.C. 2929.12. *Id.,* citing *State v. Murphy*, 10th Dist. Franklin No. 12AP-952, 2013-Ohio-5599, ¶ 14. (Citations omitted.) As was noted above, these statutes do not require courts to make specific findings or to give reasons for their decisions.

{¶ 64} In light of the record before us, there is no basis for concluding that the trial court erred in imposing a maximum sentence. Accordingly, the Third Assignment of Error is overruled.

## V. Conclusion

{¶ 65} Mabra's First Assignment of Error having been sustained, and his Second and Third Assignments of Error having been overruled, the judgment of the trial court is reversed in part and affirmed in part. The following conviction is vacated: Tampering with Evidence. Vacating this conviction will shorten Mabra's sentence by three years, the consecutive term imposed for Tampering with Evidence, and this cause will be remanded to the trial court for further hearing.

. . . . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

Ryan A. Saunders
Brian D. Brennaman
Hon. Douglas M. Rastatter