[Cite as *State v. Crowley*, 2025-Ohio-3002.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. Nos. 2024-CA-66; 2024-CA-76 |
| Appellee | : | |
| | : | Trial Court Case Nos. 24-CR-434; 24-CR-107 |
| v. | : | |
| | : | |
| DOUGLAS L. CROWLEY | : | (Criminal Appeal from Common Pleas Court) |
| | : | |
| Appellant | : | |
| | : | **FINAL JUDGMENT ENTRY & OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on August 22, 2025, the judgments of the trial court are affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
CHRISTOPHER B. EPLEY, PRESIDING JUDGE

TUCKER, J., and LEWIS, J., concur.

**OPINION**
CLARK C.A. Nos. 2024-CA-66; 2024-CA-76

CHRISTOPHER BAZELEY, Attorney for Appellant
CHRISTOPHER P. LANESE, Attorney for Appellee

EPLEY, P.J.

{¶ 1} In this consolidated appeal, Douglas L. Crowley appeals from his convictions on numerous charges stemming from the shooting death of Richard Howard II on February 5, 2024, and the drugs that were found when Crowley was apprehended the following day. Crowley's arguments are limited to two issues. He challenges his conviction for tampering with evidence in Clark C.P. No. 24 CR 107 (the murder case) and the imposition of the mandatory fine in Clark C.P. No. 24 CR 434 (the drug case). For the following reasons, the trial court's judgments are affirmed.

**I. Facts and Procedural History**

{¶ 2} Crowley and Howard were acquaintances, and Howard, a cocaine addict, had purchased crack cocaine from Crowley. In early January 2022, Crowley brought his white Chevy Tahoe to Howard so Howard could perform some repairs on it, and by early February 2022, Crowley was eager for its return. When Howard failed to return the vehicle to him, Crowley repeatedly attempted to contact Howard without success. Ultimately, around 9:30 p.m. on February 5, 2022, Crowley texted Howard a series of messages starting with "Since you want to ride around in my truck, the police is looking for you. And my family is also." This was followed by "I told my cousin if they see you shoot to kill." Crowley next wrote, "Dude what's wrong with you. I told not to f*ck me over. And straight did. Lied to me. You really don't care about your life anymore." Minutes later, he wrote, "I'm ready to go to prison on you. On everything." At 11:13 p.m., Crowley received a text from someone

showing the Tahoe parked behind an address on Stanton Avenue, where Howard was living.

{¶ 3} At 11:21 p.m. that night, Howard was parked in the Tahoe along Mason Street beside the Littleton & Rue Funeral Home parking lot, speaking with his long-time girlfriend using the Messenger app on his phone. Crowley, driving a white Chrysler 200, found him there, approximately two blocks from the Stanton address. Crowley stopped his car, approached the driver's side window of the Tahoe, and raised a gun toward Howard. Crowley and Howard had a brief altercation during which Howard was shot and sustained a wound to the head. The entire encounter lasted approximately one minute.

{¶ 4} Howard's girlfriend heard the shooting. She testified that she heard Crowley tell Howard to get off the phone and Howard respond that he was on the phone with his girlfriend and to give him a minute. She then heard Howard "crying and screaming" and tell Crowley, "Put the gun away; here's your truck." After she heard a gunshot and then nothing further from Howard, her nephew called 911 and reported the shooting. He relayed that his aunt had been on a video-call with Howard (although Howard's camera was off) and believed Howard had been shot by Crowley. He told the dispatcher the address on Stanton Avenue at which Howard was staying and that Howard had Crowley's Chevy Tahoe. Officers were dispatched to that address, but they did not find him. A resident there texted Crowley about the police investigation.

{¶ 5} At approximately 1:30 p.m. the following day, an employee of Littleton & Rue Funeral Home walked past the white Chevy Tahoe and noticed Howard slumped over the console. She called 911 and reported that the occupant had been shot in the head, which she assumed due to the blood on the top of Howard's head. An autopsy later revealed that Howard had been shot in the back of his left shoulder; the bullet was recovered from his right chest area. Springfield police officers recovered a spent cartridge casing from inside

the Tahoe. Crowley's Ohio identification card and Social Security card were also located within the vehicle.

{¶ 6} Crowley and the Chrysler 200 sedan were found at the Fairfax Inn, and he was arrested as he entered the vehicle in the parking lot. Upon searching his room, Springfield police officers discovered a digital scale and suspected powdered drugs, as well as medical paperwork with Crowley's name. The Chrysler 200 was towed to a secured facility. Officers later removed a Sentry safe from the vehicle's trunk; the safe contained a Champion bag with several baggies of suspected narcotics. A loaded Taurus G3 9mm Luger semiautomatic pistol with an extended magazine was found in the trunk behind the safe. A box of sandwich baggies and a digital scale with white powder residue were also found inside the vehicle. In an interview with a detective that night (February 6), Crowley confessed to the shooting, stating that he thought he had shot Howard in the shoulder. He expressed that he never meant to shoot Howard; he only wanted the keys to his truck.

{¶ 7} Multiple items were sent to the Ohio Bureau of Criminal Investigation (BCI) for testing. Crowley's DNA was located on the Taurus 9mm firearm found in the Chrysler 200, and the spent cartridge casing from the Tahoe was matched to that weapon. Additionally, two latent fingerprints lifted from the window of the Tahoe's driver's door were identified as Crowley's fingerprints. Tests on the baggies of suspected narcotics revealed 52 grams (+/- 0.05 grams) of methamphetamine, 10.18 grams of a mixture of cocaine and methamphetamine, and 6.16. grams (+/- 0.05 grams) of a mixture of cocaine, heroin, methamphetamine, fentanyl, tramadol, and xylazine.

{¶ 8} A search of Crowley's phone revealed several text messages from the fall of 2023 related to his trafficking of narcotics, including crack cocaine, fentanyl, methamphetamine, marijuana, and prescription drugs. Crowley had prior felony

convictions for offenses of violence that precluded him from lawfully carrying a firearm.

{¶ 9} On February 13, 2024, Crowley was indicted on eight counts related to the shooting death of Howard: (1) purposeful murder, (2) felonious assault, (3) felony murder, (4) improper handling of firearms in a motor vehicle, (5) discharge of a firearm on or near prohibited premises, (6) tampering with evidence, and (7) two counts of having weapons while under disability.   Several counts included firearm specifications, and the murder and felonious assault counts included specifications that the offenses occurred in a school safety zone.   Case No. 24 CR 107.

{¶ 10} On June 4, 2024, the State charged Crowley in a separate case with eight offenses related to the drugs located on February 6, 2024: (1) aggravated trafficking in drugs, (2) aggravated possession of drugs, (3) trafficking in cocaine, (4) possession of cocaine, (5) trafficking in a fentanyl-related compound, (6) possession of a fentanyl-related compound, (7) trafficking in heroin, and (8) possession of heroin.   Each charge included a firearm specification, and each of the trafficking charges included an additional specification that it occurred within the vicinity of a school.   Case No. 24 CR 434.

{¶ 11} The cases were consolidated for trial, which was held in October 2024. Before opening statements, the State dismissed the school-related specifications.   After deliberating, the jury could not reach a verdict on purposeful murder, and the State later dismissed that charge.   The jury found Crowley guilty of the remaining charges and specifications.   Except for the two fentanyl-related charges, the jury found Crowley guilty of a lower quantity of drugs than alleged in the indictment.

{¶ 12} After merging several counts and specifications in each case, the trial court imposed an aggregate term of 24 years to life in prison in Case No. 24 CR 107 and an aggregate term of 5½ years in prison plus a mandatory fine of $5,000 for trafficking in a

fentanyl-related compound (Count Five) in Case No. 24 CR 434. The court ordered the sentence in Case No. 24 CR 434 to run consecutively to the sentence in Case No. 24 CR 107.

{¶ 13} Crowley appeals from the trial court's judgments, raising two assignments of error.

## II. Tampering with Evidence

{¶ 14} In his first assignment of error, Crowley claims that his conviction for tampering with evidence was based on insufficient evidence and was against the manifest weight of the evidence.

{¶ 15} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether any rational finder of fact, viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id*.

{¶ 16} In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12; *see Eastley v. Volkman*, 2012-Ohio-2179, ¶ 19. When reviewing an argument challenging the weight of the evidence, an appellate court may not substitute its view for that of the trier of fact. Rather, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the

finder of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 17} Crowley was convicted of tampering with evidence, in violation of R.C. 2921.12(A)(1), based on his hiding the murder weapon in the trunk of his car. "[A] conviction for tampering with evidence pursuant to R.C. 2921.12(A)(1) requires proof that the defendant intended to impair the value or availability of evidence that related to an existing or likely official investigation or proceeding. Likelihood is measured at the time of the act of alleged tampering." *State v. Straley*, 2014-Ohio-2139, ¶ 19; *State v. Revere*, 2022-Ohio-551, ¶ 16 (2d Dist.).

{¶ 18} Crowley acknowledges that he could reasonably have expected that an investigation would ensue after the murder. However, he asserts that the State failed to present evidence that he concealed the gun with the purpose of impairing its value or availability as evidence. He analogizes his case to *State v. Like*, 2008-Ohio-1873 (2d Dist.).

{¶ 19} In *Like*, the victim had been shot three times in a vacant apartment. Three empty cartridges were found at the scene, but the murder weapon was never recovered. During an interview with the police, Like told a detective that he had shot the victim after the victim had attacked him and that he had disposed of the gun in a dumpster. At trial, an acquaintance of Like testified that he heard Like say that he had gotten rid of the gun that was used to shoot the victim. At trial, Like denied any involvement in the shooting. Like ultimately was convicted of numerous offenses, including tampering with evidence based on the disposal of the gun.

{¶ 20} On appeal, Like challenged the sufficiency of the State's evidence on that tampering with evidence offense. He argued that the State had failed to prove the corpus delicti of the crime as there was no evidence, beyond his statements, that he had tampered with the gun. The State responded that the discovery of a dead body with bullet wounds at the apartment and the absence of the gun that inflicted those wounds were sufficient evidence of tampering with evidence to permit the use of Like's statements about the gun's disposal. We disagreed, stating, "Although it is beyond dispute that the gun was removed from the scene of the crime, no evidence was presented to support an inference that the gun was taken to impair its value or availability as evidence. Thus, the state failed to offer evidence, other than Like's own statement about throwing the gun into a dumpster, tending to prove the fact that the crime of tampering with evidence (the gun) was committed." *Id.* at ¶ 24.

{¶ 21} We have repeatedly cited *Like* for the proposition that a gun's absence from the crime scene where it was used does not, without more, support the conclusion that the defendant removed the gun to impair its availability as evidence. *E.g., State v. Smith*, 2025-Ohio-679, ¶ 73 (2d Dist.); *State v. Mabra*, 2015-Ohio-5493, ¶ 31 (2d Dist.); *State v. Sims*, 2009-Ohio- 5875, ¶ 25 (2d Dist.). A significant fact in *Like* was that law enforcement officers never found the gun used in the murder.

{¶ 22} We distinguished *Like* in *State v. Bonaparte*, 2019-Ohio-2030, ¶ 42 (2d Dist.), in which witnesses saw the defendant return to retrieve the gun he dropped while running away following a shooting. We held that the jury could have reasonably concluded that the shooter retrieved the gun to prevent it from being found and used as evidence against him.

{¶ 23} In this case, Crowley drove away from Mason Street with the murder weapon. The Springfield police located the gun in the trunk of Crowley's sedan, where he must have

placed it later, and it was not discovered until after officers removed the Sentry safe, which was blocking any view of it. From this evidence, the jury could have reasonably concluded that Crowley did not simply leave with the gun but, rather, hid the gun behind the safe in the trunk to prevent its availability as evidence. Crowley's conviction for tampering with evidence was based on sufficient evidence and was not against the manifest weight of the evidence.

{¶ 24} Crowley's first assignment of error is overruled.

### III. Mandatory Fine

{¶ 25} In his second assignment of error, Crowley claims that the trial court abused its discretion when it imposed a mandatory $5,000 fine for trafficking in a fentanyl.

{¶ 26} Crowley was found guilty of trafficking in a fentanyl-related compound in an amount equal to or more than five grams but less than ten grams, in violation of R.C. 2925.03(A)(2) and (C)(9)(d), a felony of the third degree (Count Five). When a defendant is found guilty of a third-degree felony violation of R.C. Chapter 2925, the sentencing court is required to impose "a mandatory fine of at least one-half, but not more than, the maximum statutory fine amount authorized for the level of the offense." R.C. 2929.18(B)(1). Crowley was thus subject to a mandatory fine between $5,000 (the mandatory minimum) and $10,000 (the statutory maximum for a third-degree felony). R.C. 2929.18(B)(1); R.C. 2929.18(A)(3)(c).

{¶ 27} Before imposing a mandatory fine, the trial court must consider the offender's present and future ability to pay the amount of the sanction. R.C. 2929.19(C)(5). The court is not required to hold a hearing on the defendant's ability to pay, nor is it required to make findings or to expressly state that it considered the defendant's ability to pay. *E,g.,* *State v. Brammer*, 2018-Ohio-3067, ¶ 24 (2d Dist.); *State v. Lewis*, 2012-Ohio-4858 (2d

Dist.). "A trial court need only consider the issue, which it frequently can do by reviewing a pre-sentence investigation report that contains enough pertinent information." *Brammer* at ¶ 26, citing *State v. Barker*, 2014-Ohio-3946, ¶ 15 (2d Dist.).

{¶ 28} For purposes of imposing a mandatory fine, being "indigent" and being "unable to pay" are not the same. *Id.* at ¶ 25, citing *State v. Gipson*, 80 Ohio St.3d 626, 636 (1998). We have explained that "[i]ndigency concerns a defendant's current financial situation, whereas an inability to pay encompasses his future financial situation as well." *Id.* "[T]he payment of a mandatory fine over a period of time is not equivalent to the immediate need for legal representation at the initiation of criminal proceedings." *State v. Stevens*, 2023-Ohio-3510, ¶ 9 (2d Dist.), quoting *State v. Powell*, 78 Ohio App.3d 784, 790 (3d Dist. 1992).

{¶ 29} No mandatory fine may be imposed if, prior to sentencing, the offender files an affidavit with the court stating that the offender is indigent and is unable to pay the mandatory fine and the court makes those determinations. R.C. 2929.18(B)(1). The phrase "prior to sentencing" has been interpreted "to mean that the affidavit must be formally filed with the court prior to the filing of a journal entry reflecting the trial court's sentencing decision." *Gipson* at 632; *State v. Prichard*, 2023-Ohio-160, ¶ 16 (2d Dist.). "[T]he burden is upon the offender to affirmatively demonstrate that he or she is indigent and is *unable to pay* the mandatory fine." (Emphasis in original.) *Gipson* at 635.

{¶ 30} We review a trial court's determination regarding an offender's ability to pay a mandatory fine for an abuse of discretion. *State v. Ojezua*, 2020-Ohio-303, ¶ 55 (2d Dist.). "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." *State v. Darmond*, 2013-Ohio-966, ¶ 34.

{¶ 31} In this case, the trial court did not order a presentence investigation following the pronouncement of the jury's verdicts (it ordered criminal records check only), and neither

party objected.   No sentencing memoranda were filed.

**{¶ 32}** At sentencing, both the prosecutor and defense counsel made statements related to the length of Crowley's prison sentence.   The prosecutor argued that the drug charges should run consecutively to the murder and tampering with evidence sentences, whereas defense counsel sought concurrent sentences.   Defense counsel reminded the trial court that Crowley, who was 46 years old, had Stage 4 renal failure and required dialysis multiples times per week.   Neither the prosecutor nor defense counsel addressed the mandatory fine for trafficking in a fentanyl-related compound.   Defense counsel did not inform the trial court that Crowley had filed, intended to file, or would be filing an affidavit related to his inability to pay the mandatory fine.   The court indicated that it had considered Crowley's present and future ability to pay before imposing a mandatory fine of $5,000.

**{¶ 33}** On appeal, Crowley states that he filed a motion to waive the mandatory fine with the appropriate affidavit just before sentencing on October 18, 2024.   The record contains a motion "to suspend mandatory fine due to indigency," filed on October 18, 2024.   Crowley attached a financial disclosure form, which indicated that he lacked any assets or income.   Although filed on the same date, the motion appears in the record after the trial court's judgment of conviction.   Accordingly, it is not apparent that the motion was timely filed, and its request to "suspend" the mandatory fine further suggests that it was not.

**{¶ 34}** On this record, the trial court did not abuse its discretion in concluding that Crowley had the ability to pay the mandatory fine and imposing it.   The record suggests that Crowley failed to timely move for waiver of the mandatory fine.   Even assuming, for the sake of argument, that Crowley's motion were timely, the filing of the financial disclosure form was not the equivalent of filing of affidavit of indigency, which avers an inability to pay the mandatory fine.   *E.g., Ojezua*, 2020-Ohio-303, at ¶ 61 (2d Dist.); *State v. Plemons,*

2015-Ohio-2879, ¶ 9 (2d Dist.). Crowley did not, in fact, file an affidavit indicating that he was indigent and was unable to pay the mandatory fine. The failure to file a timely affidavit alleging that the defendant is indigent and unable to pay the mandatory fine is, alone, a sufficient reason to affirm the trial court's decision. *State v. Davenport*, 2017-Ohio-688, ¶ 35; *Plemons* at ¶ 9.

{¶ 35} Crowley's second assignment of error is overruled.

### IV. Conclusion

{¶ 36} The trial court's judgments are affirmed.

. . . . . . . . . . . . .

TUCKER, J. and LEWIS, J., concur.